## Allee, et al. v. Baxter, Administratrix, et al.

(Decided February 17, 1925.)

## Appeal from Marion Circuit Court.

1. Deeds—Evidence Held Insufficient to Establish Forgery of Deed.— Evidence held insufficient to establish forgery of deed, particularly in view of chancellor's contrary finding, which was entitled to weight.

2. Acknowledgment—Married Women's Deed Executed Without State Held Cured by Statute though Certificate Did Not Show Separate Examination.—Married women's deed, executed in Texas in 1900, conveying property in Kentucky, notary's certificate to which did not show grantor's examination separate and apart from their husbands, held cured by Kentucky Statutes, sections 507, 514.

3. Acknowledgment—Constitutional Law—Curative Act Validating Prior Conveyances by Married Women Held Not Invalid as Retro- active.—Curative act (Kentucky Statutes, section 514), declaring previous conveyances of realty by married women not invalid if acknowledgment conforms to present law, held not invalid as retro- active.

4. Appeal and Error—Ground for Attack on Deed Not Urged in Lower Court Cannot be Heard on Appeal.—Where deed was at- tacked in lower court only on ground of non est factum and de- fective acknowledgment, plea of fraud in its obtention cannot be considered on appeal.

P. K. McELROY and HOBSON & HOBSON for appellants.

H. S. McELROY and W. H. SPRAGENS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Af- firming.

Mrs. Birdie Alee, Mrs. Bettie Erwin and their hus- bands, of Crockett, Texas, brought suit in the Marion circuit court against Mrs. Ella Brown Baxter, as heir at law and administratrix of the estate of J. Q. Brown, deceased, to recover one-fourth of certain lands formerly owned by their grandfather, William Brown, deceased, together with the rents and profits accruing thereon after William Brown's death, it being alleged that John Q. Brown falsely represented to them that William Brown had devised his entire estate to him; that they knew nothing of the facts, and accepted his statement as true, and that they received no part of their share in that estate; that John Q. Brown took possession of it and re- tained it without ever making an inventory or appraise- ment and had appropriated their one-fourth interest to his own use.

Defendant traversed, pleaded and relied on the statute of limitations, on equitable laches, and on a deed conveying the land in question to the other heirs of William Brown, and which purported to have been executed and acknowledged by plaintiffs on the 19th day of September, 1900.

The reply traversed the affirmative allegations of the answer and pleaded *non est factum.* From a judgment for defendants plaintiffs appeal. The facts are:

William Brown, a resident of Marion county, Ky., died in 1900, the owner of two farms containing 400 acres. Three children and two grandchildren survived him. Of the children, John Q. had spent his life on one of his father's farms, had engaged in business with his father, and at the death of the latter was considerably indebted to him. Amelia had married John Mussen, a well-to-do farmer living in Marion county, Ky., and W. R. had married and moved to Arkansas, where he was engaged in farming.

Ed. Fletcher Brown was a soldier in the Confederate army; he returned home at the close of the Civil War but left immediately and moved to Texas, where he married; both he and his wife died about the year 1878, leaving two children, Birdie and Bettie, surviving them.

While in Texas he dropped his surname for a time and went by the name of Ed Fletcher but later again assumed the name of Brown. His father lost trace of him and went to Texas for the purpose of searching for his children. He found them at the residence of a Mr. Chandler, who declined to surrender them. He returned to Kentucky and about the year 1880 executed a deed to them for a tract of land. This does not seem to have been delivered or recorded and nothing came of it.

The girls grew up in poverty and were married at about the age of fifteen or sixteen, and each has raised a large family of children. Shortly before the death of Wm. Brown, Birdie's husband, S. T. Allee, wrote him in reference to some land in Houston county, Texas, formerly owned by Wm. Brown's brother, H. W. Brown, deceased. It seems that this land was of but little value; that there were delinquent taxes due upon it, which Allee paid, and that he was trying to hold it for his wife and her sister; that Wm. Brown was an heir at law of H. W. Brown, deceased, and that Allee wanted a quitclaim deed to the land from him. There was some correspondence

over this, but it did not reach a conclusion before William Brown's death. After his death the three living children had a meeting to settle his estate, but decided to have Ed's children join with them.

John Q. Brown went to Texas to see them and spent several days. Mrs. Allee was sick at the time but he met her and her family and at his invitation Betty Erwin and two of her children came to Kentucky and spent about a month at his residence, during which time she visited some of her father's relatives.

In October, after her return to Texas, deeds were executed by the three living children of William Brown conveying their interest in the Texas lands to the appellants for the recited consideration of $800.00. Appellee claims that appellants also executed a deed for the Kentucky lands to the other heirs in consideration of $800.00 cash and their interest in the Texas lands, this being denied by appellants. However that may be, W. R. Brown and Mrs. Mussen on the 8th day of November, 1900, conveyed their interest in the estate of John Q. Brown, the deed reciting that the three had theretofore acquired the interest of Birdie Allee and Bettie Erwin, and stating a cash consideration that it was executed in settlement of the estate.

Neither of these deeds was put to record, but all were held by John Q. Brown, who remained in possession of all the property until his death in 1920. He was survived by an only child, Ella Brown Baxter, who qualified as administratrix of the estate, and shortly afterward had the deed from Mrs. Mussen and W. R. Brown recorded; the deed in issue was offered for record but was questioned by the county clerk and not recorded for some time thereafter.

In the deed to John Q. Brown a lien was retained to secure the payment of certain money due Mrs. Mussen. After that deed was recorded she went to the clerk's office to release her lien thereon and discovered that her nieces were not parties thereto; she informed them of her discovery and after some investigation they filed this suit.

On the controverted points appellees' evidence is to the effect that on the arrival of Mrs. Erwin in Kentucky she was met at the station by John Mussen and taken to the home of her uncle John Q. Brown. While in Kentucky she met a number of people and conversed freely with her relatives on business matters, and spoke of the

great fertility of the Texas lands they were claiming. She became quite intimate with Mrs. Baxter and corresponded with her upon her return home. Mrs. Allee also became interested in her Kentucky relatives and wrote a number of letters to them. These and envelopes corresponding in date and addressed in the same handwriting are filed as exhibits. One of these purporting to have been written by Mrs. Erwin requests financial assistance, and it is shown that John Q. Brown sent her $50.00; while in one purporting to be signed by Mrs. Allee is an expression of thanks for this generosity. These letters discuss family matters in a manner that shows intimate relations therewith. There is also exhibited a number of letters written to the various members of the Brown family by Mrs. Allee's husband, S. T. Allee, in reference to the Texas land, in one of which he stated that the deed to the Kentucky land is enclosed. Also admitted signatures of appellants are compared with the purported signatures on the deed by witnesses who testify as to the similarity between them.

It is also shown that the officer who purported to take the acknowledgment was at the time a regular and qualified acting justice of the peace, residing at that place, and that under the laws of Texas he was authorized to take acknowledgments to deeds. He has since moved away and is understood to be dead, and no motive is assigned, or reason suggested, for a forgery of these papers by anyone in Texas.

It is also testified that the consideration was paid by John Mussen, who is now dead, and the records of the bank show that he was charged with two checks of $400.00 each at that time, though the record does not disclose the names of the payees.

On the other hand, it is proven by plaintiffs that no public settlement was ever made of Wm. Brown's estate; that while in Texas John Q. Brown told them that his father had willed him his entire estate for taking care of him. He proposed to take Mrs. Erwin home with him just for the trip. She never had any other information in reference to her grandfather's estate and assumed the truth of his statements; that while in Kentucky no one intimated to her anything to the contrary and she did not discuss her grandfather's estate with anyone; that she realized her poverty and that her uncle was defraying her expenses and was embarrassed in the presence of his family and shrank from conversation.

Neither of the appellants ever saw the deed in question, or knew of its existence until after it was recorded; that at the time it purports to have been acknowledged Mrs. Erwin was in Kentucky and Mrs. Allee was sick in bed. Both deny all of the letter writing mentioned above or that the signatures are genuine. Each can sign her name but neither could write a letter. Both deny receiving any part of the $800.00 consideration or that they knew anything in reference to it. Mrs. Erwin denies that she ever made any statements in reference to the fertility of the Texas lands: says that there were 296 acres of it worth at the time $1.00 per acre, and that William Brown had inherited one-fourth of this, making the part conveyed in the quitclaim deed by the Kentucky heirs three-fourths of a one-fourth interest.

W. R. Brown is dead. Mrs. Mussen claims to have never heard of the deed in question; she also claims that she has her husband's papers, including canceled checks and stubs, but says she is unable to find the checks claimed to have been paid appellants.

Such is the conflict in the evidence. It is quite likely that these uneducated and unsophisticated women were timid and embarrassed in the presence of their patronizing relatives. Evidently John Q. Brown possessed a dominating personality, and no doubt appellants were overawed if not overreached by him. It may be further said that under the circumstances he owed them a full disclosure of the situation and of the condition of the estate, but it is reasonably certain that they wrote or authorized the letters to be written which were filed in this action.

It is hard to conceive of Mrs. Erwin being in Kentucky for a month while negotiations were pending for a settlement of the estate without hearing anything in reference to its condition, especially in view of the strained relations existing between John Q. Brown and his brother and sister, each of whom was objecting to his demands against the estate, and his failure to administer, and each of whom had ample opportunity to divulge such information to her. It is inconceivable that the letters were forgeries, and as above suggested no reason is shown for anyone in Texas to have fabricated the deed, so that under all the circumstances we are not prepared to say that it was a forgery, especially as the chancellor decided otherwise, and weight must be given to his opinion.

2. The notary's certificate does not show that the female grantors were examined separate and apart from their husbands, and it is argued that even if the signatures were genuine that (1) under the law as it then existed, section 507, Kentucky Statutes, 1899, the deed was absolutely void unless (2) it should be considered as an executory contract under the provisions of section 2128, Kentucky Statutes, authorizing a married woman when joined with her husband to make an executory contract of sale of her real estate without the formality of an acknowledgment, in which event the contract should be enforced only in equity and upon equitable terms; that considered from this standpoint a confidential relationship existed, making it the duty of John Q. Brown to divulge to his nieces the character and value of the estate, which was not less than $10,000.00; that failing to do this and procuring their interest himself for not exceeding $800.00, he perpetrated a fraud and his estate should be made to account to them for the difference between the actual value of their shares and the amount paid them, with interest.

In considering the first proposition it will be noted that section 507 was amended by an act approved March 23, 1910, which provides, "Where an acknowledgment of deeds shall be taken by an officer of this state or by an officer residing out of this state he may simply certify that it was acknowledged before him and when it was done."

Section 514 was also amended by the same act by the use of these words:

"No conveyance of real estate heretofore made by a married woman or other person shall be adjudged to be void or invalid because the same was not certified, proven or lodged for record as heretofore required, provided the same was or is certified or proven in the manner by this act authorized."

The curative act last quoted is strongly attacked as being retroactive, and for that reason invalid. However, the notary was authorized to take the acknowledgment and only the form of the certificate is defective. Under similar circumstances all the points now urged against the validity of the act were raised and fully considered in the case of Echols v. Wood, 143 Ky. 451, in which it was upheld, and we adhere to the conclusions there reached.

The second point is well argued and if based upon a proper premise would be entitled to serious consideration; but if the instrument is valid as a deed the principles relating to executory contracts do not apply to it, and as we have reached the conclusion that it is a valid deed there is nothing upon which to base the argument. It must not be overlooked that the only attacks upon the deed are *non est factum* and defective acknowledgment. There is no plea of fraud in its obtention and we can only consider the issues tendered and raised in the lower court.

Perceiving no error the judgment is affirmed.