## Eckles, By, et al. v. Wood, et al.

(Decided May 2, 1911 )

### Appeal from Christian Circuit Court.

Deeds—Acknowledgment Outside of this State—Sufficiency of Certificate—Held in this case that section 507, Kentucky Statutes was repealed and in lieu thereof the following was substituted therefor: "Where the acknowledgment of a deed shall be taken by an officer of the State or by an officer residing out of this State, he may simply certify that it was acknowledged by him and when it was done."

H. W. LINTON for appellant.

HESTER & ALLENSWORTH for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellees instituted this action May 24, 1910, for the purpose of removing a cloud from the title of a tract of land in Christian County. According to the testimony, the land is worth about $2,500. This land, before her death in 1902, belonged to Daisy W. Eckles, the wife of appellant A. H. Eckles and the mother of the infant appellant, Dorothy Eckles, her only child. A short time before her death, a deed was prepared by A. H. Eckles wherein he and his wife, Daisy W. Eckles, were grantors and Mrs. Inez D. Wood, appellee, was grantee. The deed was duly signed and acknowledged by the husband

August 11, 1902, and then sent by mail to Daisy W. Eckles, the wife, who was in Colorado, for her health, for her to sign and acknowledge, which she did before a notary public in Arapahoe County, Colorado, who certified her acknowledgment as follows:

"State of Colorado  } ss.
"Arapahoe County.  }

"I, Burt B. Bloom, a notary public in and for said county in the State aforesaid, do hereby certify that Daisy W. Eckles, personally known to me to be the same person whose name is subscribed to the annexed instrument of writing, appeared before me this day in person, and acknowledged that she signed and delivered the said instrument of writing as her free and voluntary act for the uses and purposes therein set forth. I further certify that my commission expires January 9, 1905.

"Given under my hand and notarial seal, this 18th day of August, 1902.
[Seal]            (Signed)   "BURT B. BLOOM,
                                "Notary Public."

It will be observed that this certificate is in the correct form for an acknowledgment taken in this State (Ky. Stat., section 507), but is not the form of certificate required by subsection 2 of section 507, Ky. Stat., which applies when the acknowledgment of a married woman is taken out of this State to a deed conveying land within this State. The deed was delivered to appellee and recorded, and she was put in possession of the land which she has held ever since. Shortly previous to the filing of this action, she contracted a sale of it but failed to complete it, as the purchaser refused to accept a deed from her and her husband because of the defect in the certificate copied above, and it was for the purpose of remedying this alleged defect that she brought this action.

The circumstances which induced the execution of the deed were, in substance, as follows: Daisy W. Eckles' father and appellee's husband were brothers. Daisy's mother died when she was about three years old and, by consent of Daisy's father, appellee took her, raised, cared for and educated her. She, in fact, gave her a good education and she grew into a fine lady. Daisy was, however, at all times physically weak, and her aunt required very little work of her; she gave her many trips,

one to California for her health. In short, appellee treated Daisy as a good mother would have treated her, and Daisy treated her aunt as a dutiful child would her mother. When Daisy was grown she married appellant, Eckles, who was and is a good man and in good financial condition. After her marriage she received from one of her uncles' estate quite a good deal of property which made her financially independent, and as her aunt was in moderate circumstances only, she made her this deed intending to remunerate her in part for what she had done for her. The consideration named in the deed is "love and affection," and the payment by her aunt of a $500 mortgage which was against the land at that time, which the aunt paid off. Daisy made her home with appellee from the time her mother died until her death from consumption, and appellee gave her the care of a mother during that time. Notwithstanding these equities in appellee's favor, the deed was and is invalid on account of the defect in the certificate, unless the act of the General Assembly of 1910 cures it of the defect. (Acts 1910, pp. 249, 250 and 251.) We copy that part of the act which has reference to the question under consideration, to-wit: Section 502, Ky. Stat., as amended is as follows:

"Deeds executed out of the State, and within the United States, by married women or other persons, may be admitted to record, when the same shall be certified, under his seal of office, by the clerk of a court, or his deputy, or by a notary public, mayor of a city, or Secretary of State, or commissioner to take the acknowledgment of deeds, or by a judge under the seal of his court, to have been acknowledged or proved before him in the manner hereby required."

Section 507 was repealed and in lieu thereof was enacted the following:

"Where the acknowledgment of a deed shall be taken by an officer of this State or by an officer residing out of this State, he may simply certify that it was acknowledged before him, and when it was done."

The act repeals the words, "by persons other than married women," in section 501, of the Kentucky Statutes, and inserts the words, "by married women or other persons." The words "by persons other than married women," are stricken out of section 502, and in lieu thereof are inserted the words, "by married women or other persons." Thus we see that section 507, Kentucky

Statutes, the one relied upon by appellant was repealed and another enacted in lieu thereof, which, when taken in connection with the other amendments set out, we are of the opinion, relieves the deed in question of its infirmities and makes it a valid and binding contract. The guardian ad litem,however, contends in his able brief that the General Assembly had no right or power to enact such a statute; that it violates the provisions of the State and United States Constitutions; that it partakes of the nature of an ex post facto law and impairs the obligations of contracts, both of which are forbidden by the Constitutions.

In the case of Thornton, et al. v. McGrath, et al., 1 Duvall, 350, where this court was considering a curative statute passed to make a sale of infants' real estate valid, said:

"Retrospective legislation is not, merely as such, unconstitutional; and though it may often be impolitic and unjust, the judiciary is bound by it unless it shall have an effect forbidden by the fundamental law. Ex post facto statutes, applying only to crimes, and statutes impairing the obligation of contracts, are expressly forbidden by the Constitution. The retroaction of the statute may be also unconstitutional constructively, if it divest vested rights. The only provision in the Constitution which authorizes this constructive inhibition is that which secures private property from appropriation to public use without the owner's consent or a just compensation; and the judiciary has construed this guaranty against the public use as an implied guaranty against private use, subject to the same limitation of the owner's consent or a just equivalent. And this prevents the taking away of one man's property and giving it to another, which would be divesting a vested right." * * *

"The confirmatory statutes were intended for the benefit of such purchasers, as well as for the benefit of such infants, by securing good titles to the purchasers and the fruits of good sales to infants whose estates may be disposed of by their State as parens patriae; and the State may, if necessary for the effectual exercise of the power, even abolish the legal disability of infancy, as it has virtually done in this class of cases, pro hac vice. * * *

The foregoing views and principles are sustained by many decisions of the supreme court of the nation, and of that of most of the States, a specific citation of which is deemed unnecessary.''

We see this statute is not inhibited by the rule applying to ex post facto laws, as it applies alone to crimes. Nor does it impair the obligation of a contract or take the property of one and give it to another, which can be done only when the property is to be used for public purposes. This statute was passed for the purpose of providing the character of evidence by which one can retain property obtained under a fair contract, and not for the purpose of impairing contracts.

In the case at bar, appellee paid the owner more than the value of the land, and the owner, Daisy Eckles, realizing that fact executed the deed, according to the testimony, as our statute before the amendment of 1910, required, but the notary public who took her acknowledgment in Colorado, being ignorant of what our statute required his certificate to show, failed to insert therein all the requirements of the statute as it then existed. The enactment of this statute did not take the property of one and give it to another; nor did it impair the obligation of a contract, but it does establish a rule of evidence whereby appellee is enabled to hold the land she received under the contract fairly made and that which the contracting parties desired her to do. The passage of the amendments simply enacted a new rule of evidence whereby such contracts may be proved, which it clearly had a right to do.

The case of Pearce's Heirs v. Patton, &c., 7 B. Mon., 162, is unlike the case at bar. In that case the person who took the acknowledgment of Mrs. Patton had no authority to do so; but the notary in the case at bar had the authority and performed all the requirements of the statute, but failed to make his certificate show that fact.

Cooley in his Constitutional Limitation puts the matter in its proper light on pages 463 and 464, when he says:

''Other cases go much further than this, and hold that, although the deed was originally ineffectual for the purpose of conveying the title, the healing statute may accomplish the intent of the parties by giving it effect. At first sight these cases may seem to go beyond the mere confirmation of a contract and to be at least tech-

nically objectionable, as depriving a party of property without an opportunity for trial, in as much as they proceed upon the assumption that the title still remained in the grantor, and that the healing act was required for the purpose of divesting him of it, and passing it over to the grantee. Apparently, therefore, there would seem to be some force to the objection that such a statute deprives party of vested rights. But the objection is more specious than sound. If all that is wanting to a valid contract or conveyance is the observance of some legal formality, the party may have a legal right to avoid it; but this right is coupled with no equity, even though the case be such that no remedy could be afforded the other party in the courts. The right which the healing act takes away in such a case is the right in the party to avoid his contract—a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. As the point is put by Chief Justice Parker, of Massachusetts, a party can not have a vested right to do wrong; or, as stated by the Supreme Court of New Jersey, 'Laws curing defects which would otherwise operate to frustrate what must be presumed to be the desire of the party affected, can not be considered as taking away vested rights. Courts do not regard rights as vested contrary to the justice and equity of the case.' "

It would be inequitable to deprive appellee of this land under the facts of this case, and in our opinion this curative amendment is not unconstitutional.

The judgment is affirmed.