Lee MOORE et al., Appellants,

v.

Henry WARD, Commissioner of Highways of Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

April 10, 1964.

———◆———

Marshall, Cochran, Heyburn & Wells, James W. Hendricks, Louisville, William A. Young, Hazelrigg & Cox, Frankfort, for appellants.

Stanley B. Mayer, Louisville, for amicus curiae, Mayer, Cooper & Kiel, Louisville, of counsel.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., James J. Shannon, Jr., Asst. Director of Law, Dept. of Highways, Frankfort, Oldham Clarke, Sp. Counsel, Dept. of Highways, Louisville, for appellees.

CLAY, Commissioner.

This suit was brought to test the constitutionality of the "Billboard Act" (KRS 177.830 to 177.990, enacted in 1960). Appellants represent three classes of property owners who have an interest in the maintenance of advertising signs in areas near public highways. The statute was upheld by the Chancellor.

In substance the Act prohibits the erection of any "advertising device" on private property within 660 feet of the right of way line of any interstate highway, limited access highway, or turnpike. Excepted are advertising signs which identify businesses conducted on the premises, or which carry information authorized by law to be posted, and other types. The erection of new signs after March 1, 1960 is forbidden, but those existing on that date may be maintained until March 1, 1965. The offending devices are declared to be a public nuisance, may be summarily removed by public authorities, and criminal penalties are imposed for violations.

Appellants first raise what is in substance a procedural point. They contend they should have been permitted to introduce *evidence* to establish that advertising signs are not inimical to traffic safety. The purpose would be to show that the legislature was laboring under a misconception when it enacted the law as a safety measure. There are several reasons why a trial of this issue would be improper and unnecessary in this case.

 As pointed out in appellants' brief, the test of constitutionality is whether the Act in question is unreasonable or arbitrary. (Section 2 of the Constitution of Kentucky.) The issue is one of law. In passing upon the constitutionality of a statute the court takes judicial notice of matters of common knowledge. 11 Am. Jur., Constitutional Law, section 145 (page 825). Kohler v. Benckart, Ky., 252 S.W.2d 854. The court may not examine the validity of reasons which impelled the legislature to act, nor may it reappraise those reasons. Berman v. Parker, et al., 348 U. S. 26, 75 S.Ct. 98, 99 L.Ed. 27. The question is not what influenced the legislation, but whether the emergent law is reasonably within the scope of a legitimate public purpose. See 11 Am.Jur., Constitutional Law, sections 141, 142 (pages 818, 820).

In some cases evidence has been accepted to identify the subject matter of legislation or to determine its application to a particular fact situation, but appellants have not cited us to any case requiring a court to hear evidence on the validity of a particular premise which may have induced legislative action. There is authority to the effect that courts cannot consider evidence on a question of this nature. 11 Am.Jur., Constitutional Law, section 145 (page 825). Legislative motive, understanding or inducement are not on trial, and it is not the function of the courts to reappraise legislative reasons or to weigh evidence with respect thereto. Berman v. Parker, et al., 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; Railway Express Agency v. People of the State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533.

■ Even assuming appellants could produce substantial evidence that billboard signs do not adversely affect traffic safety, this record indicates, and our common knowledge suggests, that the question involves so many intangible factors as to make debatable the issue of what the facts establish. Where this is so, it is not within the province of courts to hold a statute invalid by reaching a conclusion contrary to that of the legislature. Radice v. People of the State of New York, 264 U.S. 292, 44 S. Ct. 325, 68 L.Ed. 690.

It further may be observed that evidence such as appellants wish to introduce could not be a determining factor. Assuming (what it does not purport to do) that it would establish the statute was "manifestly unreasonable and oppressive,"[1] or that the apparent relationship of the law to a traffic problem was "palpably false",[2] then such proof would be unnecessary. Anything so manifest or palpable could doubtless be discerned by the court without the necessity of evidence.

Finally, appellants' position on this point is unavailing because the traffic safety problem was only one of many significant public welfare considerations which doubtless influenced the legislature to act. As recited in the Act itself, there are such matters as "convenience and enjoyment of public travel," "the free flow of interstate commerce", and "the protection of the public investment in the system of interstate and defense highways within the Commonwealth." In addition, there are such matters as the elimination of "distracting influences," and the "enhancement of natural scenic beauty".[3]

■■ It is peculiarly within the province of the legislature to assimilate, consider,

and weigh *all* the factors which inhere in the concept of public welfare. When the courts repeatedly assert that they have no authority to challenge the wisdom of a statute,[4] it is a recognition that the legislature may within extremely broad limits determine its "own standard of public welfare". Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469. It is therefore evident that appellants' proof on this issue of fact, even if it chipped a stone, could not destroy the mosaic of public welfare. Such method of attack upon the statute must fail.

It is next contended that by the enactment of one section of this statute, and acting pursuant thereto, the Commonwealth has bartered away its sovereign police power. This rather circuitous argument is based on KRS 177.890, which authorizes the Commissioner of Highways to enter into an agreement with the United States Secretary of Commerce, and the actual agreement made pursuant thereto. Appellants' brief asserts the Commonwealth has covenanted that it will regulate outdoor advertising in areas adjacent to interstate highways in accordance with national standards promulgated by the United States Secretary of Commerce, in return for which the Commonwealth will receive federal subsidies.

■ The contention is that by virtue of this agreement the Commonwealth has somehow relinquished to the federal government the exercise of the state police power. This obviously is not so. The federal standards and policies are not laws of this Commonwealth. The law under consideration is the Act enacted by the State Legislature. There is nothing evil or illegal in conforming state laws to national policy (or policies of other states). As a matter of fact, the existence of a national

1. State Racing Commission v. Latonia Agricultural Ass'n., 136 Ky. 173, 123 S.W. 681, 25 L.R.A.,N.S., 905.

2. Railway Express Agency v. People of the State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533.

3. These two considerations are set forth in the preamble to the Act.

4. Cooper v. Kentuckian Citizen, Ky., 258 S.W.2d 695.

policy in this field is a persuasive consideration in determining whether the public welfare is involved.

The state law must stand on its own feet. If the federal standards with which the legislature conforms (or agrees to conform) do not bear a reasonable relationship to the public welfare, they would not validate an invalid act. Conversely the acceptance of those standards by the legislature, acting within the scope of its own power, could not possibly make a valid law invalid. The legislative process constantly involves the acceptance or rejection of policies followed in other jurisdictions. National policy may very well be sound state policy.

 It is suggested that the acceptance of a subsidy by the state as consideration for the agreement establishes that the Commonwealth has bartered away its police power. The conclusion does not follow the premise. Assuming the subsidy was one of the incentives to the enactment of this law, this does not affect its validity. The courts are concerned with the product, not the motives which produced it. Louisville and Jefferson Co. M.S.D. v. Joseph E. Seagram & S., 307 Ky. 413, 211 S.W.2d 122, 4 A.L.R. 2d 588; Adams v. City of Richmond, Ky., 340 S.W.2d 204; People v. Stover, 12 N.Y. 2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272.

 The final answer to appellants' argument on this point is that neither the provision in the statute before us nor the alleged agreement entered into relinquishes one iota of police power to the federal government. Had it subjected appellants to federal laws in this field, it would not necessarily have been invalid for that reason. Commonwealth v. Associated Industries of Kentucky, Ky., 370 S.W. 2d 584. But we are not confronted with such a debatable situation. There is nothing in the Act or the agreement which *delegates* power. Appellants are subjected only to the police power exercised by the Kentucky Legislature, not that of the federal government. We must test this statute by determining whether it now impairs appellants' constitutional rights, not by what induced or conditioned its passage or what may result from future revision.

We now reach the basic objection that the Act is an excessive exercise of police power arbitrarily depriving appellants of vested property rights. The argument is that the public interest served is so grossly disproportionate to the injury suffered by appellants that there was no reasonable relationship between its purpose and its effect. The appellants have presented this contention somewhat in the form of "balancing the equities", which, as a practical matter, seems a proper method of approach.[5] Before pursuing it, we shall dispose of three incidental issues.

 The argument that this law results in the taking of property "without due process of law"[6] is of no independent significance. Almost inevitably the exercise of police power involves the destruction or limitation of property rights without a hearing. It is not a violation of that constitutional mandate if the police power is properly exercised. 16A C.J.S. Constitutional Law § 571, page 588; City of Louisville v. Thompson, Ky., 339 S.W.2d 869. To say that property is taken without due process, or without compensation, or in abridgement of the equal protection clause of the Federal Constitution, is simply another way of presenting the argument that the Act is arbitrary under section 2 of the Kentucky Constitution. See Pritchett v. Marshall, Ky., 375 S.W.2d 253; 11 Am.Jur., Constitutional Law, section 266 (page 1003).

 Another ghost must be laid. It is contended this is an "ex post facto" law destroying vested property rights. The simple answer is that this Act does not impose a criminal penalty upon any person for any prior act, which is the essence of "ex post

5. Bowling v. City of Somerset, Ky., 333 S.W.2d 769.

6. U. S. Constitution, section 1, 14th Amendment

facto". Eckles v. Wood, 143 Ky. 451, 136 S.W. 907, 34 L.R.A.,N.S., 832; Walker v. Commonwealth, 279 Ky. 198, 130 S.W.2d 27; City of Louisville v. Thompson, Ky., 339 S.W.2d 869. If appellants are complaining of retrospective or retroactive operation of the law, their position is likewise untenable. The Act does not affect or impair rights existing prior to the date of its enactment. To insist that private rights are immutable and once vested can never be changed is to ignore the precept that private right is always subordinate to public right asserted by the proper exercise of the police power. Levy v. Curlin, Ky., 241 S.W.2d 997; Bischoff v. Hennessy, Ky., 251 S.W.2d 582.

Another incidental issue is raised by the contention that a limited number of signs would not be objectionable and that there is no necessity for their wholesale prohibition. It is obvious that an attempt to limit the number or kind (which might be an acceptable form of regulation) is fraught with very serious difficulties. See Fuller v. Fiedler, 19 Wis.2d 422, 120 N.W.2d 700. This is another matter of policy which it was necessary for the legislature to decide in the light of the problems involved.

We now reach the question of whether this Act constitutes an arbitrary exercise of police power. This raises two issues: (1) is it within the scope of a public purpose for the state to impose regulations on property within the proximity of its major highways, and (2) if so, are the regulations imposed by this Act unreasonable?

█ On the first point, it is admitted by appellants that a public purpose is served by some plan for the regulation of outdoor advertising. They concede that the erection of signs properly has been subject to zoning laws and ordinances. If it were not admitted, it seems obvious that as an incident to the construction and maintenance of highways there is a public interest in those things which facilitate the movement of traffic, improve the efficiency of highway operations, increase the enjoyment of public travel, and preserve the systems' value as a public asset. The surroundings of highways are matters of public interest and public welfare. Jasper v. Commonwealth, Ky., 375 S.W.2d 709.

The second point raises the ultimate issue in this case, which is the reasonableness of this particular plan of regulation. It is reasonable if it goes no further than to fairly protect the public interest of which we have just spoken.

In considering reasonableness we must take cognizance of the objective of the Act. It is to keep the state's principal thoroughfares free of a certain class of billboard signs. No one contends the distance prescribed, 660 feet, is not a fair clearance designation. The argument is that this total prohibition is unreasonable because unnecessary. Unnecessary for what?

We have heretofore discussed appellants' argument that it is unnecessary from a traffic safety standpoint. It is not our function to determine the degree of necessity. We certainly cannot find a legislative determination that traffic safety would be promoted by this law is "palpably false". See Railway Express Agency v. People of the State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533. In any event, this is a legitimate factor the legislature may weigh in determining public necessity.

Even ignoring it, there are other factors which weigh heavily in the balance of legislative decision. Obviously a billboard sign is a distracting device. It diverts, and is designed to divert, the motorist's attention from the highway. In the public interest the legislature could weigh the right of the motorist to be free of such distracting signs. It could determine they impair the motorist's enjoyment of the highway.

█ Closely allied to the enjoyment factor is the promotion of the scenic beauty surrounding the highways. Aesthetic considerations are of sufficient potency for the legislature to find a public necessity for this.

type of legislation. We have recently considered that question and have accepted aesthetic considerations as justifying the exercise of police power. Jasper v. Commonwealth, Ky., 375 S.W.2d 709.

Another consideration is one of cooperating with the federal government to obtain financial assistance and promote the uniformity of high speed highways. The fact that the Federal Congress and federal authorities have deemed this type of regulation as beneficial to the public is also a factor in determining public necessity.

In view of the considerations above outlined, on what theory may we say this law is not reasonably necessary in the· public interest? We would be forced to adjudge the legislature had no rational basis for such a finding. We are not passing upon the wisdom of the law. We are not appraising it to determine if it is the best of its kind. We are not weighing the factors which could reasonably have been taken into consideration by the legislature, one against the other. We are simply recognizing that the determination of method is strictly a legislative matter with which we cannot interfere if it has a reasonable relationship to a legitimate public purpose.

One of the most important and far reaching developments in Kentucky within recent years has been the construction and improvement of its major highways. Many concepts of 20 years ago are obsolete. Concepts today may be obsolete 20 years from now. This is where the legislature plays its part in the social order. Automobile traffic and highways play a bigger role in public life every day. The extent and method of their regulation must be left to the legislature if the means bear a reasonable relationship to a legitimate end.

Appellants contend this Act takes so much from so many for such a nebulous public purpose. This is perhaps a proper consideration in determining the reasonableness of the regulatory method, but both of appel-· lants' assumptions are unsound.

The property interests impaired have value only in the exploitation of publicly constructed highways. General Outdoor Advertising v. Department of Public Works, 289 Mass. 149, 193 N.E. 799. Billboards make use of the highways and the property right imposes a servitude on them. Kelbro, Inc. v. Myrick, 113 Vt. 64, 30 A.2d 527.

We do not mean this characterization of appellants' property rights gives the Commonwealth any special authority to destroy them. We do say their nature is such the legislature may reasonably find that public rights of travel in the highways outweigh this private manner of use. We have examined the case of Ghaster Properties, Inc. v. Preston, Ohio Com.Pl., 184 N.E.2d 552; Ohio App., 194 N.E.2d 158, wherein it was stated that this consideration has no place in determining the constitutionality of statutes, but we disagree. The nature of rights impaired certainly has a bearing upon the reasonableness of the statutory scheme.

■■■■ With respect to appellants' other assumption that the public interest in this type of regulation is slight because intangible, we· cannot accept it. That is the very problem the legislature, in its infinite wisdom as the policy determining body, must resolve. If we admit there is some public interest in the regulation of billboard signs (and appellants do admit it), then the substantiality of that interest as opposed to private rights is a matter of legislative discretion up to the limit of arbitrariness. In the light of what we have heretofore said, it is apparent the legislature had ample bases upon which to find that the public interest outweighed the private rights in the subject matter of this controversy. See Levy v. Curlin, Ky., 241 S.W.2d 997.

We have considered this problem as an original proposition in order to examine all of appellants' arguments. The question has, however, been raised in other jurisdictions and this type of advertising billboard regulation has been upheld against constitutional attack. See New ·York State Thruway Authority v. Ashley Motor Court,·Inc., 10·

N.Y.2d 151, 218 N.Y.S.2d 640, 176 N.E.2d 566; In re Opinion of the Justices, 103 N.H. 268, 169 A.2d 762; Fuller v. Fiedler, Unreported Circuit Court Memoranda Opinion, on appeal on one phase, 19 Wis.2d 422, 120 N.W.2d 700. To the extent it is inconsistent with what we have said in this opinion, we decline to follow the decision in Ghaster Properties, Inc. v. Preston, Ohio Com.Pl., 184 N.E.2d 552; Ohio App., 194 N.E.2d 158.

The judgment is affirmed.