Irvin T. DIEMER, Cecelia B. Diemer, and Huberta Boone d/b/a Boone Advertising Agency, Appellants,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS, Appellee.

J. Chester PORTER, Betty Porter, Harry M. Roggenkamp, Jean Roggenkamp, Kenneth Stout, Donna Stout, John Stout, and Huberta Boone d/b/a Boone Advertising Agency, Appellants,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS, Appellee.

Nos. 89-SC-270-DG, 89-SC-271-DG.

Supreme Court of Kentucky.

Jan. 18, 1990.

Rehearing Denied April 26, 1990.

Philip E. Wilson, Earl S. Wilson, Sr., Lexington, J. Chester Porter, Joseph J. Wantland, Walter A. Sholar, Shepherdsville, for appellants.

John H. Davis, Jr., William H. Wallace, Transp. Cabinet, Louisville, for appellee.

LEIBSON, Justice.

The Commonwealth of Kentucky, Transportation Cabinet ("Transportation Cabinet") filed two separate declaratory judgment actions in Bullitt Circuit Court, identical in subject matter, seeking to have certain billboards erected in 1981 declared in violation of the Kentucky Billboard Act (KRS 177.830–.890), and seeking either a mandatory injunction requiring removal or an order enjoining interference with removal of the billboards by Transportation Cabinet employees. The defendants/appellants are owners of real property located near Interstate Highway 65 in Bullitt County, and Boone Advertising Agency who owns billboard advertising devices erected and maintained on the property pursuant to leasehold rights.

The billboards involved are located beyond 660 feet from the right-of-way of the Interstate Highway outside of an "urban area" as defined in 603 KAR 3:010, Sec. 2(17) and 3:020, Sec. 2(20), regulations adopted by the Secretary of Transportation pursuant to KRS 177.830(10), which states as follows:

> "(10) 'Urban areas' means those areas which the secretary of transportation, in the exercise of his sound discretion and upon consideration being given to the population within boundaries of an area and to the traveling public, determines by official order to be urban; provided, however, that any such determination or designation of the secretary shall not, in any way, be at variance with the federal law or regulation thereunder or jeopardize the allotment or qualification for federal aid funds of the Commonwealth of Kentucky."

The Kentucky Billboard Act was originally enacted in 1960 to supplement the so-called "Highway Beautification Act of 1959," which was aimed at providing financial inducements to restrict billboard advertising along the interstate highway system. In *Moore v. Ward*, Ky., 377 S.W.2d 881 (1964), a suit to test the constitutionality of the original statute, we address the question of whether this Act constitutes an arbitrary exercise of police power, and held that it was not. We also held that "[a]esthetic considerations are of sufficient potency for the legislature to find a public necessity for this type of legislation," and that the statute as worded did not present an unreasonable "plan of regulation" because it goes no further than to fairly protect the public interest. *Id.* at 886–87. *See* also *Jasper v. Commonwealth*, Ky., 375 S.W.2d 709 (1964), recognizing "aesthetic considerations as justifying the exercise of police power." 377 S.W.2d at 887.

The statute found constitutional in *Moore, supra,* with certain minor and irrelevant exceptions, represented total prohibition of all billboard advertising devices within 660 feet of the right-of-way of an interstate highway. However, the Kentucky Billboard Act has been subsequently amended on several occasions in an effort to accommodate changes in the federal law, with the most significant amendment occurring in 1976, to its present form which is under renewed constitutional attack.

In its present form, KRS 177.841(2), the principal statute involved in this litigation, provides as follows:

> "(2) The erection or maintenance of any advertising device located outside of an urban area and beyond six hundred and sixty (660) feet of the right-of-way which is legible and/or identifiable from the main traveled way of any interstate highway or federal aid primary highway is prohibited with the exception of:

(a) Directional and official signs and notices;

(b) Signs advertising the sale or lease of property upon which they are located; or

(c) Signs advertising activities conducted on the property on which they are located."

It is the new sections of the Kentucky Billboard Act enacted in 1976 which the present appellants challenge as unconstitutional for a variety of reasons, some of which, such as the claim of unreasonable exercise of police power in violation of Section 2 of the Kentucky Constitution and the Fourteenth Amendment of the U.S. Constitution, and the taking of property rights without payment of just compensation in violation of Sections 2 and 13 of the Kentucky Constitution and the Fifth Amendment of the U.S. Constitution, are adequately dealt with in *Moore v. Ward,* which is controlling. We have no doubt that property rights may be controlled in the exercise of police power to the extent of prohibiting the use of private property for billboard advertising for reasons of safety or aesthetic considerations, or any combination thereof in the public interest, and we have no intention of revisiting *Moore* on this account. Nor do we doubt that restricting the exercise of property rights by the use of police power when it is reasonable and necessary to do so in the public interest is not the taking of property by the government that requires payment of compensation. The problem here is whether the new provisions of the statute which have been added since *Moore,* as written, are so vague and overbroad as to be a constitutionally impermissible exercise of police power, and whether the statute as worded represents an unconstitutional delegation of legislative power to executive authority, i.e., the Secretary of Transportation. These two problems represent opposite sides of the same coin.

The trial court held that the new statutory provision found in KRS 177.841(2) was unconstitutional. The Court of Appeals has reversed. We have accepted discretionary review, and now we reverse the Court of Appeals for reasons to follow.

The appellants' complaints regarding vagueness and overbreadth, and unconstitutional delegation of legislative power to the head of an executive agency, are directed at two aspects of the new statute prohibiting advertising devices beyond 660 feet:

1) the statute applies only to devices "located outside of an urban area," and

2) only to devices specified as "legible and/or identifiable from the main traveled way" of the federal highway.

We will deal first with point two which we perceive as presenting no constitutional problem. The chief complaint in this respect is that the term "identifiable from the main traveled way" is nonspecific in meaning, i.e., it could be interpreted as meaning either the signboard is not identifiable or that the writing or logo thereon is not identifiable, or both. Because we recognize that one of the primary purposes of the Kentucky statute was to conform to the federal statute and thus qualify for the maximum available in federal funds, we can look to the federal statute for historical perspective. In 23 U.S.C. Sec. 131, the current language of the Federal Highway Beautification Act expresses this concept as "visible from the main traveled way of the system, and erected with the purpose of their message being read from such main traveled way." 23 U.S.C. Sec. 131(c). Obviously, a sign which may not be "read from such main traveled way," either by verbiage or by logo, is of little value. Thus viewed "identifiable" relates to the message, not the signboard, and the limitations of the Kentucky statute are sufficiently definite to withstand constitutional scrutiny. The Kentucky administrative regulations on the subject are in conformity with the language of both the state and federal statutes. It is our responsibility to read the statutes of the General Assembly so as to save their constitutionality whenever such can be done consistent with reason and common sense (*Fann v. McGuffey,* Ky., 534 S.W.2d 770 (1975)), although we cannot go so far as to add additional words

to give constitutionally permissible meaning where none would otherwise exist (*Musselman v. Commonwealth*, Ky., 705 S.W.2d 476 (1986)). "Identifiable" as used in the statute, when viewed in context, passes constitutional muster.

The appellants argue that *State v. Mayhew Products Corp.*, 211 Neb. 300, 318 N.W.2d 280 (1982), should persuade us to the opposite result. This Nebraska case holds that the word "visible" in a Nebraska statute similar to the present one is susceptible of dual or multiple meanings, thus violating Fourteenth Amendment protection against a statute which fails to "provide adequate notice of what conduct it requires or proscribes." The Nebraska opinion states:

> "[I]t is uncertain if visibility is meant to be the legibility of the writing on the billboard from the Interstate right-of-way or the possibility of observing a billboard in the far distance regardless of its legibility from the highway." 318 N.W.2d at 283.

We agree in principle with the Nebraska decision, but we do not view the words "legible and/or identifiable" in context in the Kentucky statute as being so vague as the word "visible" in the Nebraska statute, and we do not reach the same result.

■ However, the first prong of the appellants' argument that KRS 177.841(2) is impermissibly vague and overbroad is more serious. In areas beyond 660 feet the statute does not prohibit the erection or maintenance of billboards unless the device is "located outside of an urban area." Thus, under the statute the illegality of an advertising device cannot be established until it is first determined that it is "located outside of an urban area," a term of infinite variety depending upon the viewpoint of the person applying it. "Urban" is defined in Webster's Ninth New Collegiate Dictionary, p. 1298, as "of, relating to, characteristic of, or constituting a city." Using the term "urban" to characterize an area presents almost limitless problems with regard to density, geographic relationship, and the character of the habitation.

The General Assembly chose to deal with the indefinite nature of the term "urban area" used in the statute by delegating to the Secretary of Transportation, in KRS 177.830(10), the definitional section of the statute, responsibility for deciding and then designating by "official order" what area shall be considered "urban."

If there is a restriction on the discretion granted to the Secretary of Transportation to decide in what areas billboards will be permitted and in what areas they shall not, it is found only in the limitation that his designation "shall not, in any way, be at variance with the federal law or regulation" thus jeopardizing Kentucky's "allotment or qualification for federal aid funds." Thus the Secretary has unlimited power to be more restrictive than the federal law, so long as he is not less so.

The question is not whether the Secretary's designations are reasonable but whether the definition of "urban area" in KRS 177.830(10) is sufficient to withstand the charge that the statute is unconstitutionally vague and overbroad because the phrase is undefined. The nondelegable duty of the legislative department to define statutory terms sufficiently so that persons of ordinary intelligence do not have to guess at their meaning is thus stated by the Nebraska Supreme Court in *State v. Mayhew Products Corp.*, quoted *supra*,:

> "The statute must provide adequate notice of what conduct it requires or proscribes, as well as guidelines by which a violation of the statute may be fairly and nonarbitrarily determined." 318 N.W.2d at 283.

The requirements of the Kentucky constitutional principle of separation of powers, Kentucky Constitution Sections 27 and 28, are the same. The duty to define general terms cannot be delegated by the legislative branch to the executive branch. Kentucky is a strict adherent to the separation of powers doctrine. As we stated in *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922):

> "Perhaps no state forming a part of the national government of the United States has a constitution whose language more

emphatically separates and perpetuates what might be termed the American tripod form of government than does ... [the Kentucky] Constitution...."

In a long line of cases, illustrated by our recent decision in *Legislative Research Com'n v. Brown*, Ky., 664 S.W.2d 907 (1984), we have upheld the principle that the General Assembly cannot delegate any portion of the legislative function to another authority. The legislative scheme must be essentially complete on its face, leaving to regulatory authority administrative rather than policy decisions. The "delegation of discretion is not unlawful" only "if sufficient standards controlling the exercise of that discretion are found in the act." *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462, 471 (1974). In *Legislative Research Com'n v. Brown, supra*, applying this principle we were compelled to strike down legislation delegating to the LRC power to approve the action of the executive in applying for so-called federal "block grants." We are faced with a similar situation here. In both instances the General Assembly has undertaken a sweeping grant of power to an administrative authority in order to avail itself of federal funding.

We are not, per se, in any way critical of legislation enacted to take advantage of federal funding, but we continue to adhere to the premise that this must be done within the separation of powers doctrine. As we stated in *LRC v. Brown, supra* 664 S.W.2d at 915:

"It is clear from the aforementioned cases that delegation of legislative power, to be lawful, must not include the exercise of discretion as to what the law shall be.... [S]uch delegation must have standards controlling the exercise of administrative discretion."

In the present case the administrative regulations defining the term "urban area" as utilized in KRS 177.841(2), are 603 KAR 3:010 and 020. The definition is taken directly from the federal regulations as found in 23 CFR Chapter 1 (4–1–89 ed.), Sec. 750.153(t) which in turn is taken verbatim from the latest edition of the federal statute as found in 23 U.S.C. Sec. 101(a).

The definition is confused and problematical. 603 KAR 3:010(17) states:

" 'Urban area' means an urbanized area or, in the case of an urbanized area encompassing more than one (1) state, that part of the urbanized area in each such state or an urban place as designated by Bureau of Census having a population of 5,000 or more and not within any urbanized area, within boundaries to be fixed by responsible state and local officials in cooperation with each other, subject to approval by the Secretary of the United States Department of Transportation. Such boundaries shall, as a minimum, encompass the entire urban place designated by the Bureau of the Census. Such urban areas shall be designated by official order of the Kentucky Secretary of Transportation."

Our Kentucky regulation has the virtue of not being at variance with federal legislation, but it has little else. Like the federal regulation, it is confusing to the point of being unintelligible. It fails to put a particular property owner on notice as to whether his property is or is not within an urban area. It makes the designation of such area subject to continual change, being tied either to the term "an urbanized area" or to "an urban place as designated by the Bureau of Census having a population of 5,000 or more and not within any urbanized area, within boundaries to be fixed by responsible state and local officials in cooperation with each other."

But perhaps its most serious defect is not in what it says, but in the fact that the Kentucky Secretary of Transportation has "broad discretion" granted by KRS 177.-841(2) to use any definition he might choose as long as it is not at variance with the federal definition. The definition of what is an "urban area" (and thus what is not) may be as restrictive as the Secretary shall decide to make it.

The fact that the broad delegation of legislative authority to determine the definition of an "urban area" found in the federal statute is copied in the state statute does not cure its state constitutional law defects. Even if we are to assume that the

federal law would escape federal constitutional scrutiny, our Kentucky Constitution imposes a higher standard in this area. As we stated in *Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387, 390–91 (1939):

"The Federal Constitution, though it limits the grant of powers, is not so restrictive of powers granted. It is to be observed that, unlike our own and many other state constitutions, the Federal Constitution merely assigns the legislative power to Congress. U.S.C.A. Const. Article 1, Section 1. That instrument contains no provision expressly forbidding the Congress to delegate its legislative powers.... Because of the flexibility and liberality of the Federal Constitution in this relation, and of the restrictions of our State Constitution, the construction by the United States Courts of Acts of Congress vesting or delegating extraordinary powers to administrative boards or executive officers does not have the usual persuasive force of legal precedent in considering the validity and efficacy of Acts of the Kentucky Legislature."

With respect to KRS 177.841(2) the General Assembly has abdicated its legislative power by causing the entire prohibitive power of the statute to be dependent upon the "sound discretion" of the Secretary of Transportation, by delegating its authority to define the phrase "urban area."

█ Thus we conclude that the statute in question is unconstitutionally vague and overbroad in failing to define in what areas the statute will apply with sufficient precision to put the public on notice as to its application. We further conclude that such defect has not been constitutionally relieved by transferring to the Secretary of Transportation power to cure the defect by executive order because this becomes a constitutionally impermissible delegation of the legislative function.

The within case is reversed and remanded to the trial court to enter a judgment in conformity with this Opinion.

STEPHENS, C.J., and LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

COMBS and GANT, JJ., dissent.