**FLYING J TRAVEL PLAZA
and Kentucky Flying J,
Inc., Appellants,**

v.

**COMMONWEALTH of Kentucky, TRANS-
PORTATION CABINET, DEPART-
MENT OF HIGHWAYS, Appellee.**

No. 95–SC–388–DG.

Supreme Court of Kentucky.

April 25, 1996.

As Modified on Denial of Rehearing
Aug. 29, 1996.

Howard O. Mann, Margaret E. Bruner, Trimble & Mann, Corbin, Frank A. Atkins, Williamsburg, for Appellants.

Gregg Y. Neal, Neal & Davis, Shelbyville, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a judgment of injunction by the Boone Circuit Court holding that the electronic sign of Flying J Travel Plaza was in violation of KRS 177.830–177.890 determining that the content of the information presented on the on-premises sign violated Kentucky law and ordering a modification of the message or removal of the sign.

The major issues presented are whether the statutes and regulations impose an unconstitutional restriction on both commercial and noncommercial free speech, and whether the Cabinet has failed to demonstrate that less restrictive measures are not available to accomplish a legitimate interest.

Flying J argues that the message board displayed only speech that was lawful and not misleading and that the Cabinet has not met its burden of proof that the restrictions advance a legitimate government interest. They also contend that the content-based restriction is an unconstitutional limitation on noncommercial speech; that Kentucky's content based regulation is not a reasonable time, place and manner restriction and that the Kentucky regulations and statutes violate Section One (4) of the Kentucky Constitution as well as Section Two. They maintain that KRS 177.863(4)(a) is vague, overbroad and unconstitutionally delegates legislative power to the Cabinet. They state that they have

not violated the statute or regulations and that KRS 177.867 requires that compensation be paid to them for the enforcement of 603 KAR 3:010 § 3(1)(h).

The Cabinet responds by claiming that the statutes and regulations prescribe reasonable standards to further a substantial governmental interest and that Flying J did not receive a permit due to the manner of its display. The Cabinet also argues that the lighting restrictions advance a substantial governmental interest and that when viewed in its entirety the statutes and regulations are tailored to serve a governmental interest. They believe the restrictions are content neutral and that the Kentucky legislation is a reasonable time, place and manner restriction. They also assert that the statutes and regulations do not violate Section Two or Section One (4) of the Kentucky Constitution. They do not believe that KRS 177.863(4)(a) is vague or overbroad, and is not an improper delegation of legislative authority. The Cabinet claims that Flying J has used an advertising device in violation of KRS 177.863(4)(a) and that there has been no taking requiring any compensation.

Flying J Travel Plaza and Kentucky Flying J, Inc. are the owners and operators of a travel plaza located within 660 feet of the right-of-way of Interstate 75 near the Walton–Verona exit in Boone County, Kentucky. The facility offers a wide variety of services. On October 19, 1989, Flying J applied for and received initial approval to erect an on-premises sign at a cost of $130,000. The sign contained an electronic message board which was intended to attract the attention of the operators of motor vehicles and trucks on the interstate. The lighted electronic message board displayed information such as welcome messages, time, date, temperature, weather and information regarding various local activities and events including the prices of products sold on the premises.

The sign was activated on March 14, 1990. The Cabinet refused to issue the final permit claiming it violated 603 KAR 3:010 § 3(1)(h), which prohibits signs containing or including flashing, moving or intermittent lights except those displaying time, date, temperature or weather and limited to one cycle of four

displays with a maximum completion time of five seconds. The only complaint about the sign was that it displayed messages other than time, date, temperature or weather on the message board.

In May of 1990, an official of the Cabinet sent a letter to Flying J stating that the sign was in violation and that the electronic message board could only display time, temperature, weather or other community service announcements. Flying J was advised that they could display fuel prices in a fixed position. The Cabinet did not issue a final permit for the sign. The Cabinet sought a mandatory injunction directing Flying J to remove the sign because it was in violation of the statutes and was not authorized by a valid permit from the Cabinet. The Cabinet also sought a permanent injunction precluding Flying J from erecting or maintaining any sign in violation of the billboard act.

The circuit court entered a judgment in favor of the Cabinet requiring compliance and permanently enjoining a violation of the statutes in question. A majority of a panel of the Court of Appeals affirmed the judgment. This Court granted discretionary review.

It should be understood that the height of the sign or the other dimensions of the sign or its frequency of illumination have not been argued here. The parties stipulated as follows:

> The sign in question contains a lighted electronic message board which displays information such as welcome messages, time, date, temperature, weather, church and boys club events, congratulations to local and professional teams, current fuel prices, availability of restaurant services and the availability of prices and products sold on the premises.

It is generally agreed by the parties that the sign in question can be where it is. The only question is the content of the message board. Our analysis of the legal issues is therefore confined to the question of the content of the message on the billboard. There is no contention that any vulgar, obscene or tasteless message has been placed on the sign. Consequently, our review must begin with the

current state of Kentucky law on the subject and then consider how it relates to existing Federal law in the area.

The sign may be an irritation and an annoyance but the regulation of it must be governed by recognized legal principles. The government and its agents in the form of the regulatory agency are subject to the law and must abide by it. Here they must provide sufficient evidence to show how the highway safety and aesthetic conditions are diminished by the specific content of the sign.

The statutory focus of this case is on KRS 177.863 which provides in pertinent part that certain "advertising devices shall be subject to the following standards":

(4) Lighting of advertising devices: Advertising devices may be illuminated subject to the following restrictions:

(a) Advertising devices which contain, include or are illuminated by any flashing intermittent, or moving light or lights are prohibited except those giving public service information such as time, date, temperature, weather, or similar information.

Although Flying J's constitutional arguments centering on the alleged arbitrariness and vagueness of the "public service information" and "similar information" was summarily rejected by the Court of Appeals as having "no merit" Flying J seeks solace in the successful challenge to the vagueness of the phrase "urban area" in part of the same Kentucky billboard act in *Diemer v. Commonwealth, Transportation Cabinet,* Ky., 786 S.W.2d 861 (1990).

Further restrictions at issue appear in 603 KAR 3:010 § 3(1)(h) prohibiting:

(h) Signs which contain, include or are illuminated by any flashing, intermittent or moving lights, except those giving public service information of time, date, temperature or weather and limited to one (1) cycle of four (4) displays. They may contain no other message. The maximum time limit for the completion of the four (4) display cycle shall be five (5) seconds. Signs which have a continuous revolving or running message shall be limited to the same

restrictions as to message content, limited to one (1) cycle and limited to five (5) seconds for the completion of the one (1) cycle.

We must first turn our attention to the state of the law in Kentucky. Administrative regulations of any kind which have been duly adopted and properly filed have the full effect of law. However, the authority of the agency is limited to a direct implementation of the functions assigned to the agency by the statute. Regulations are valid only as subordinate rules when found to be within the framework of the policy defined by the legislation. It is our responsibility to ascertain the intention of the legislature from the words used in enacting the statute rather than surmising what may have been intended but was not expressed. *Kentucky Association of Chiropractors, Inc. v. Jefferson County Medical Society, et al.,* Ky., 549 S.W.2d 817 (1977).

It has been said that judicial review of rules and regulations of administrative agencies may not apply with equal force to regulations by agencies composed of specialists in the area where the court must acknowledge limited understanding. However, that situation is not present in this case. First, it must be observed that no evidence was presented by the administrative agency in this case, and there is no specific scientific specialization involved in this type of administrative activity. Therefore, *Graybeal v. McNevin,* Ky., 439 S.W.2d 323 (1969) is not applicable.

We begin our review with *Moore v. Ward,* Ky., 377 S.W.2d 881 (1964) which upheld the constitutionality of the "Billboard Act," KRS 177.830 to 177.990 enacted in 1960. In that case, it was determined that the private right is always subordinate to a public right asserted by the proper exercise of police power. Further, it stated that highway surroundings are matters of public interest and public welfare, and that aesthetic considerations justify exercise of the police power by the government. *Diemer v. Commonwealth, Transportation Cabinet, supra,* provides an excellent summary of the current law in regard to the regulation of billboards in Kentucky. The actual holding of the case

was that a statutory amendment to the billboard act was unconstitutionally vague and overbroad as it relates to the definition of "urban areas." In considering this case, we are persuaded by the language of *Kentucky Registry of Election Finance v. Louisville Bar Assn.*, Ky.App., 579 S.W.2d 622 (1979), in which the Court stated that "Any time free speech and free press are suppressed, the reasons for such suppression must be subjected to close scrutiny. The burden is on the government to show the existence of such an interest." *Id.* at 627.

*Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982), stated in part that "The courts are charged with reviewing state regulations to determine if a regulation is necessary to serve a compelling state interest and if it has been narrowly written to protect against the evil that the government can control. *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) provides, "Where a regulation extends so far as to completely outlaw speech because of the subject matter of its content, there is a strong presumption of its unconstitutionality." Both of these federal decisions are cited with approval in *J.C.J.D. v. R.J.C.R.,* Ky., 803 S.W.2d 953 (1991).

## I. Commercial Speech

█ The central issue in this case is the proper application of the final part of the test for the regulation of commercial speech set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The determining question is whether the regulation is no more broad or no more expansive than is necessary to serve the substantial governmental interest asserted. The Cabinet is required to demonstrate the existence of a reasonable connection between the interests of the government and traffic safety and aesthetics and the restraint on commercial speech. *See Outdoor Systems, Inc. v. City of Mesa,* 997 F.2d 604 (9th Cir.1993). *Cf. Wheeler v. Commissioner of Highways,* 822 F.2d 586 (6th Cir.1987), citing *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

█ The government bears the burden of justifying its restrictions. It must affirmatively establish the reasonable necessity for the regulations. *Cf. Board of Trustees, S.U.N.Y. v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). *See also Kentucky Registry, supra.*

█ In this case the Cabinet has failed to demonstrate a reasonable connection between the means provided by KRS 177.863(4)(a) and 603 KAR 3:010 § 3(1)(h) and the ends of highway safety and aesthetics. Consequently, the statute and regulation are not narrowly tailored to achieve the desired objectives of the law and regulation. Therefore the statute and the regulation are unconstitutional restrictions on the commercial free speech of Flying J.

The electronic billboards in question which comply with the technical requirements of the regulation may display "temperature—99 degrees" but may not display "regular unleaded $1.07." When the regulation prohibits commercial speech but allows time, date, temperature or weather information to be displayed, the regulations become substantially broader than necessary to protect the governmental interest of highway safety.

█ The First and Fourteenth Amendments to the Constitution of the United States provide protection for commercial free speech. Although reasonable time, place and manner restrictions may be used, the state government has the responsibility of justifying such restrictions. The two federal cases which provide the foundation for any consideration of this matter are *Central Hudson Gas, supra,* and *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

Restrictions placed on the lighted message board violate the First and Fourteenth Amendments to the federal Constitution because the restricted speech concerns only lawful activity and is not misleading. The restrictions do not seek to implement a substantial governmental interest, and they do not directly advance any governmental interest. In fact the restrictions go much farther than necessary to accomplish their proper objective. There is no dispute that the com-

mercial free speech in question here concerns a lawful activity. The most telling factor in this case, which is fatal to the position of the Cabinet, is that they have not met the burden of proof to demonstrate that the restrictions advance a legitimate governmental interest.

In this case, the Cabinet has failed to offer any proof in the trial court, either by expert testimony or otherwise, that the restrictions imposed on the kind of speech allowed to be displayed on the electronic billboard have anything to do with highway safety or aesthetics. Certainly highway safety and aesthetics can be legitimate state interests. In a technical sense, regulations regarding time limits and the number of electronic cycles displayed, as distinguished from content, could have some bearing on highway safety. However, in this case, the content based restrictions have no bearing on either interest.

An examination of KRS 177.863 reveals that the statute has much to recommend it. It indeed advances legitimate governmental interests. Section 4(a) of KRS 177.863 gives rise to the problem presented here. That section of the statute attempts to regulate the content of the signs to public service information or similar information. The regulations promulgated in response to the statute in 603 KAR 3:010 § 3(1)(h) prohibit any message other than time, date, temperature or weather. The regulation contradicts the statute which allows "public service information" similar to time, date, temperature and weather. Both the statute and the regulation clearly permit electronic billboards, but make an improper attempt to limit the content of the message on such boards.

Further the Cabinet has failed in its burden of proof that less restrictive measures are not available to achieve the legitimate government interests. The regulations here are substantially broader than those necessary to protect government interests. The Cabinet did not introduce any proof that the statute and regulations advance any governmental interest. The deposition of one of the Cabinet officials reflects an inability to express the purpose for the content-based restrictions in the regulations. The Cabinet

has failed to demonstrate why simple limits on the number of displays and maximum time limits for those displays will not better serve the governmental interest and highway safety than a content based restriction that results in a prohibition of certain kinds of commercial speech. A complete ban of off-premises billboards was held unconstitutional in *Burkhart Advertising, Inc. v. City of Auburn, Ind.*, 786 F.Supp. 721 (N.D.Ind.1991), because it was not the only and least restrictive method available of promoting government interests. In this case, the limits which are already present in the regulations adequately provide for highway safety concerns. The standard remains that of a reasonable connection between the ends and the means, a relationship that employs not necessarily the least restrictive means but a means narrowly tailored to achieve the desired objective. *Cf. City of Mesa, supra.* It remains the obligation of the government to establish the justification of its restrictions.

## II. Noncommercial Speech

 The restrictions in question are also unconstitutional as an impermissible limitation on content based noncommercial speech. Here the state has chosen to permit some noncommercial messages to be displayed at given intervals and consequently it must allow all noncommercial messages within these time restrictions to be displayed as well. *Metromedia, Inc., supra.* Therefore KRS 177.863(4)(a) and 603 KAR 3:010 are unconstitutional regulations of noncommercial speech as well. The regulations place a greater value on information relating to time, date, temperature and weather than is placed on other noncommercial forms of speech.

 Here, the challenged provisions prohibit use of certain electronic billboards, both commercial and noncommercial, with the limited exception of those conveying information regarding time, date, temperature or weather. It is true that the state may regulate speech when necessary to advance legitimate state interests, but the First Amendment prohibits the government from regulating speech in ways that favor some viewpoints or ideas at the expense of others. *See Taxpayers for Vincent, supra.* The

United States Supreme Court has "consistently accorded noncommercial speech a greater degree of protection than commercial speech." *Metromedia.* The restrictions in this case allow some noncommercial messages to be displayed while prohibiting other such messages. The state does not have the choice in the area of noncommercial speech to evaluate the strength of, or distinguish between various communicative interests. *See Metromedia* and *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

The U.S. Supreme Court has continued to recognize the viability of the *Metromedia* decision. We realize the reliance placed on the federal decision of *Rappa v. New Castle County*, 18 F.3d 1043 (3rd Cir.1994) by the Court of Appeals. The U.S. Supreme Court had the opportunity to reconsider its reasoning in *Metromedia* after the *Rappa* decision but declined to do so in its unanimous opinion in *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

An excellent discussion of the legal philosophy which is the basis for the tolerance of billboard advertising in a society which values free speech may be found in *Wheeler, supra* and *City of Mesa, supra.* We believe that any reliance on the so-called *Rappa* test is misplaced. The decision in that case was a one to one to one panel and related in pertinent part to a specific location. This case is not about location, but rather about content. The location of the sign as built was acceptable to the Cabinet and was not contrary to state law or regulation. The provisions challenged in this appeal and the factual basis for this appeal were not addressed in *Wheeler.*

The legal reasoning related to commercial speech is also applicable to noncommercial speech. Here the content-based restrictions as applied to the electronic message billboard violates Section Two of the Kentucky Constitution. The distinction made by the statutes and regulations regarding the content of messages which may be displayed on the board has no relationship to the protection of health, safety or the general welfare of the people of Kentucky or of those driving through the state. There is no reasonable relation between the mere content of the message itself and the safety of the driving public.

■■ In another billboard case which involved a stationary billboard, this Court has recognized that statutes which are unconstitutionally vague and overbroad and which involve an unconstitutional delegation of legislative power to the executive, are improper. *Diemer v. Commonwealth, Transportation Cabinet, supra.* Here the regulations adopted pursuant to statute completely omit the words "such as" and "or similar information" which are contained in the statute. The legislature did not define either "public service information" or information that was "similar" to public service information in KRS 177.830. The Cabinet simply wrote those words out of the statute by omitting them from the regulations. Such conduct was impermissible. *See also State Board for Elementary and Secondary Education v. Howard*, Ky., 834 S.W.2d 657 (1992), which in part found a statute unconstitutional for vagueness because of the failure to define the word "activities."

■■ In this situation the legislature has given no guidance to the Cabinet by defining the words "public service information" and "similar information." This part of the statute amounts to an unconstitutional delegation of the legislative power to the Cabinet in violation of Sections 27 and 28 of the Kentucky Constitution.

As any motorist, the members of this Court can fully appreciate the concern of the majority of the Court of Appeals when they observed, "We believe the result would be proliferation of what might be considered gaudy and garish electronic billboards." We must first note that the Cabinet has failed to present any evidence in the record supporting such a fear. The burden for such concern remains on the state to present by evidence of probative value. Permitting commercial speech under the same technical regulations currently applied to time, temperature, date and weather will no more lead to the proliferation of electronic billboards than will the allowance of nonelectronic or stationary electronic billboards. The distribution of truthful and lawful commercial

speech on electronic billboards should be restricted only by the technical requirements of 603 KAR 3:010 § 3(1)(h) that promote a substantial government interest in highway safety or aesthetics. Such rules cannot be selectively or subjectively enforced.

The regulation in this case is poor and it is based on a rather vaguely presented statutory foundation which itself needs more specific definition. A proper case, supported by a sufficient evidentiary foundation as to aesthetics and traffic safety statistics, might produce a different result. However, on the basis of this record and the applicable law, we can only conclude that the sign cannot be regulated for its content alone. It may be that the tower itself is offensive, but the message cannot be interfered with as in the case presented here.

The other issues raised by the parties are without merit.

It is the holding of this Court that the regulations which prohibit commercial speech but which allow time, date, temperature or weather information to be displayed are substantially broader than necessary to protect the governmental interests of highway safety and aesthetics. The Cabinet has failed to demonstrate a reasonable connection between the requirements of highway safety and aesthetics and has not narrowly tailored a regulation to achieve any desired objectives on the part of the government. As a result it has developed an unconstitutional regulation on commercial free speech. It is the further holding of this Court that the regulations are unconstitutional restrictions upon noncommercial free speech because the state has chosen to allow some noncommercial messages to be displayed, and it must allow all noncommercial messages within the time frame to be displayed.

The decision of the Court of Appeals is reversed and the injunction issued by the circuit court is dissolved.

KING, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion in which STEPHENS, C.J., joins.

BAKER, J., not sitting.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

The regulation has a reasonable relation to highway safety. There are psychological and physiological distinctions between the messages on this highway electronic verbal message sign that uses electric lights and movable parts to display messages in words, numbers, or symbols, and when it does so, it changes the messages at selected intervals of time by using a message changing mechanism. In this particular case the sign can be operated in a flashing manner or a scrolling manner.

These signs are designed to distract fast moving motorists on interstate highways and to entreat them to divert to off highway premises for the purposes of making sales. Along with the distractions are such human factors as response time, information processing, and brain overload. Signs with a commercial message elicit a conditioned response. Advertising is premised on such conditioned responses. The appellant has invested thousands of dollars in this sign for purposes of advertising. Time, temperature, and weather information are content neutral and elicit no response requiring diversion from the highway.

STEPHENS, C.J., joins in this dissent.