UNITED SIGN, LTD; Gene Caldwell and Lori Caldwell; and Marvin Bowlin and Lana Bowlin, Appellants,

v.

COMMONWEALTH of Kentucky, Transportation Cabinet, Department of Highways, Appellee.

and

United Sign, Ltd; and C.V. Advertising, Inc., Appellants,

v.

Commonwealth of Kentucky, Transportation Cabinet, Department of Highways, Appellee.

Nos. 1999–CA–002740–MR, 1999–CA–002757–MR.

Court of Appeals of Kentucky.

Oct. 27, 2000.

Rehearing Denied Dec. 1, 2000.

Discretionary Review Denied June 6, 2001.

---

18. *Gordon, supra* at 179.

19. *Cf. Jackson, supra* at 514.

Philip E. Wilson, Lexington, KY, Baxter Bledsoe, Jr., London, KY., for appellants, United Sign, Ltd; and C.V. Advertising, Inc.

Philip E. Wilson, Lexington, KY., for appellants, United Sign, Ltd; Gene Caldwell and Lori Caldwell; Marvin Bowlin and Lana Bowlin.

Albert B. Chandler III, Attorney General, Stuart W. Cobb, Assistant Attorney General, Frankfort, KY., for appellee, Commonwealth of Kentucky Transportation Cabinet, Department of Highways.

Before HUDDLESTON, MILLER and TACKETT, Judges.

## OPINION

TACKETT, Judge.

Appellants, United Sign, Ltd., C.V. Advertising, Inc., Gene Caldwell, Lori Caldwell, Marvin Bowlin and Lana Bowlin (hereafter collectively referred to as United), bring these appeals from the trial court's grants of summary judgment in favor of appellee, Commonwealth of Kentucky, Transportation Cabinet, Department of Highways (the Cabinet). As both appeals involve the same essential issues, each will be resolved in this opinion.

### I. Facts

United erected six billboards within 660 feet of the right-of-way of Interstate 75 in Rockcastle County, Kentucky.[1] The billboards were erected without a permit from the Cabinet, although United filed permit applications at or about the time the billboards were erected. The Cabinet filed actions in the Rockcastle Circuit Court seeking to compel removal of the billboards. The Cabinet subsequently filed motions for summary judgment, arguing that the billboards were illegal per se because United had not received a permit before erecting them. The trial court granted the Cabinet's motions and ordered the billboards to be removed. Pursuant to United's motion, the trial court suspended that portion of the summary judgments ordering the billboards to be removed pending the resolution of the appellate process. United then filed these appeals.

### II. Overview of the Billboard Act and Applicable Administrative Regulations

United raises several related arguments on appeal. These arguments essentially focus on whether the administrative regulations promulgated by the Cabinet in response to the Kentucky Billboard Act, Kentucky Revised Statute (KRS) 177.830–177.890, are valid. Before the merits of United's arguments can be examined, however, it is necessary to briefly discuss the Billboard Act.

KRS 177.850 provides that the general purposes of the Billboard Act are to provide for maximum safety and visibility along affected highways[2] and to preserve the "natural scenic beauty" of areas adjacent to the affected highways. To pro-

---

1. The Caldwells are parties to this appeal because they own the property upon which one of the billboards was erected. The Bowlins own the property upon which another billboard was erected.

2. The roadways affected by the Billboard Act are interstate highways, limited access highways, turnpikes, and federal-aid primary highways. KRS 177.830(6); 177.850.

mote those objectives, the General Assembly enacted KRS 177.841, subsection one which provides that: "[e]xcept as otherwise provided in KRS 177.830 to 177.890, the erection or maintenance of any advertising device upon or within six hundred and sixty (660) feet of the right of way of any interstate highway or federal aid primary highway is prohibited."[3] "Any advertising device erected, maintained, replaced, relocated, repaired or restored" in violation of the Billboard Act is deemed "a public nuisance and such device may without notice be abated and removed by any officer or employee of the state department of highways or upon request of the commissioner by any peace officer." KRS 177.870. KRS 177.870 "gives the Commonwealth [i.e., the Cabinet] discretion as to when there is a need to remove advertising devices." *Owensboro Metropolitan Board of Adjustments v. Midwest Outdoor Advertising, Inc.*, Ky.App., 729 S.W.2d 446, 448 (1987).

Exceptions to KRS 177.841's ban on advertising devices are found in KRS 177.860. That statute provides in relevant part:

> The commissioner of the Department of Highways shall prescribe by regulations reasonable standards for the advertising devices hereinafter enumerated, designed to protect the safety of and to guide the users of the highways and otherwise to achieve the objectives set forth in KRS 177.850, and the erection and maintenance of any of the following advertising devices, if they comply with the regulations, shall not be deemed a violation of KRS 177.830 to 177.890:
>
> (1) An advertising device which is to be erected or maintained on property for the purpose of setting forth or indicating:
>
> (a) The name and address of the owner, lessee, or occupant of the property; or
>
> (b) The name or type of business or profession conducted on the property; or
>
> (c) Information required or authorized by law to be posted or displayed on the advertising device;
>
> (2) An advertising device which is not visible from any traveled portion of the highway;
>
> (3) An advertising device indicating the sale or leasing of the property upon which it is placed;
>
> (4) Advertising devices which otherwise comply with the applicable zoning ordinances and regulations of any county or city, and which are to be located in a commercially or industrially developed area, in which the commissioner of highways determines, in exercise of his sound discretion, that the location of the advertising devices is compatible with the safety and convenience of the traveling public.

United relies upon the exception contained in KRS 177.860(4), and argues that the administrative regulations promulgated by the Cabinet exceed the authority granted to it in that statute. The Cabinet argues, essentially, that United's billboards are illegal per se because they were erected without a permit and, therefore, they should be removed.

The administrative regulations pertaining to the Billboard Act are contained in 603 Kentucky Administrative Regulations

---

**3.** An advertising device is defined in KRS 177.830(5) as "any billboard, sign, notice, poster, display, or other device intended to attract the attention of operators of motor vehicles on the highways.... However, it does not include directional or other official signs or signals erected by the state or other public agency having jurisdiction."

(KAR) 3:080. 603 KAR 3:080 § 4(1) provides that "an advertising device which is located in a protected area[4] and which is visible from the main traveled way of an interstate or parkway highway shall have an approved permit from the Transportation Cabinet, Department of Highways to be a legal advertising device." A billboard advertising device may be erected in a protected area if "[t]he area is a commercially or industrially developed area as defined in Section 1 of this administrative regulation" and if the advertising device complies with the requirements of the Billboard Act, the administrative regulations, and any city or county zoning ordinances. 603 KAR 3:080 § 4(2)(a)1.a.-b.[5]

### III. Do the Administrative Regulations Exceed the Authority Delegated to the Cabinet by the Statutes

■ It is well-settled that an administrative agency may promulgate administrative regulations. *Henry v. Parrish,* 307 Ky. 559, 211 S.W.2d 418, 421 (1948). "Administrative regulations of any kind which have been duly adopted and properly filed have the full effect of law." *Flying J Travel Plaza v. Commonwealth, Transportation Cabinet, Department of Highways,* Ky., 928 S.W.2d 344, 347 (1996). The regulations, however, "are valid only as subordinate rules when found to be within the framework of the policy defined by the legislation" as an administrative agency's authority "is limited to a direct implementation of the functions assigned to the agency by the statute." *Id.* Any doubts concerning the existence or extent of an administrative agency's power should be resolved against the agency. *Henry, supra* at 211 S.W.2d 422. United argues that the administrative regulations requiring a permit to be obtained prior to the erection of a billboard in a protected area are invalid because the statutes do not specifically authorize the Cabinet to adopt permit requirements and, furthermore, the permit requirements are not necessary and fair inferences to be drawn from the Billboard Act.

■ United's arguments concerning the Cabinet's alleged lack of authority to promulgate the regulations in question is without merit. KRS 177.860 specifies that "[t]he commissioner of the Department of Highways shall prescribe by regulations reasonable standards for the advertising devices hereinafter enumerated, designed to protect the safety of and to guide the users of the highways and otherwise to achieve the objectives set forth in KRS 177.850 . . . ." It is clear, therefore, that the General Assembly intended for the Cabinet to adopt regulations which would promote highway safety and preserve the scenic beauty of the area surrounding affected highways. The regulations in question

---

4. Protected areas are "all areas within the boundaries of this Commonwealth which are adjacent to and within 660 feet (210.17 meters) of the state-owned highway right-of-way of the interstate . . . ." 603 KAR 3:080 § 1(29).

5. A commercially or industrially developed area (CIDA) is defined in 603 KAR 3:080 § 1(9) as:
 (9) "Commercially or industrially developed area" means:
 (a) Any area within 100 feet (thirty and five-tenths (30.5) meters) of, and including any area where there are located within the protected area at least ten (10) separate commercial or industrial enterprises, not one of the structures from which one (1) of the enterprises is being conducted is located at a distance greater than 1620 feet (493.8 meters) from any other structure from which one (1) of the other enterprises is being conducted; and
 (b)1. Within the area there was a commercial or industrial enterprise in existence on September 21, 1959; or
 (2). The land use for the area was within an incorporated municipality as the boundaries existed on September 21, 1959.

bear a rational relationship to the goals of the Billboard Act and are, accordingly, within the authority granted to the Cabinet by the General Assembly.

The permitting requirements are rationally related to the Billboard Act's objectives because a permit requirement prevents a proliferation of unregulated advertising devices in an area. Without the permit requirement, any person or entity could erect advertising devices in an area in such a manner as to distract or impair the visibility of drivers and destroy the scenic beauty of the area around the highways. Those potentially dangerous or distracting signs could remain in place for a period of several years while the Cabinet went through the legal process of having them removed, which is precisely the scenario present in the case at hand. If a permit requirement is utilized, no sign may be erected without receiving prior expert permission from the Cabinet that the sign falls within the exceptions to the Billboard Act's general ban on advertising devices in affected areas. Such a plan provides the maximum amount of safety to drivers and passengers on affected highways.

Furthermore, the permit process ensures that one centralized entity will make a determination as to whether a prospective advertising device complies with the objectives of the Billboard Act, rather than have circuit courts make those decisions throughout the state. Finally, although factually distinguishable, *Commonwealth, Department of Transportation v. Central Kentucky Angus Association,* Ky.App.,

555 S.W.2d 627 (1977) found that the Billboard Act "envision[s] a program under which only carefully selected signs, *deemed by an administrative agency to be in the interest of the traveling public,* shall be erected." *Id.* at 628 (Emphasis added). In short, the Cabinet did not exceed its statutory authority by enacting administrative regulations requiring a permit to be obtained before a billboard advertising device may be erected.[6]

IV. Effective Date of Regulations

 United argues that the Cabinet's interpretation of the Billboard Act violates Section 15 of the Kentucky Constitution.[7] United's argument is without merit. The statutes and regulations in effect at the time a permit application is filed govern whether that permit shall be approved as statutes shall not generally be given retroactive application. KRS 446.080(3). *See also Bauer v. Varity Dayton–Walther Corporation,* 118 F.3d 1109, 1111 n. 1 (6th Cir.1997) ("Regulations, like statutes, are ordinarily presumed not to have retroactive effect"). Once a permit is granted and the advertising device is erected, it is protected from any future changes in the law by virtue of the regulations permitting and governing nonconforming advertising devices. 603 KAR 3:080 § 3(4)-(6).

V. Are the Regulations Unconstitutionally Vague

 United argues that the regulations in question are unconstitutionally vague. This argument is also without merit. We agree with the trial court that the regulations are "sufficiently clear to reasonable

---

**6.** The Cabinet argues that the regulations are proper under KRS 13A.100(2). That statutory subsection authorizes an administrative agency to prescribe regulations setting forth the "process for application for license, benefits available or other matters for which an application would be appropriate...." However, the administrative regulations in question do not list KRS 13A.100 as a statutory basis for their enactment. Thus, KRS 13A.100 may not be relied upon as authority for the regulations. *See* KRS 13A.224(*l*).

**7.** That section provides that "[n]o power to suspend laws shall be exercised unless by the General Assembly or its authority."

persons" such that a person is reasonably informed as to the regulation's requirements. Furthermore, this issue was not raised in United's prehearing statements. Thus, the issue may not be considered on its merits. Kentucky Rule of Civil Procedure (CR) 76.03(6).

VI. Administrative Hearing Regulations

■ United argues that the Cabinet does not have the authority to promulgate regulations setting forth the procedures for taking an administrative appeal of the denial of a permit. United did not raise this issue in its prehearing statement. Therefore, the issue may not be addressed on its merits. CR 76.03(6). Even if the issue were to be examined on its merits, United's argument would fail. Although not expressly mentioned in the Billboard Act, we find that a proper interpretation of legislative intent would permit the Cabinet to conduct administrative hearings for the benefit of persons aggrieved by its actions pursuant to KRS 13B.010–170.[8] Such administrative remedies serve the salutary purposes of being resolved more expeditiously than circuit court actions, saving valuable judicial resources by reducing the number of circuit court actions filed, and, in the event an action is filed in circuit court, providing a more detailed record upon which the circuit court can base its decision.

VII. Conclusion

■ The Cabinet has the authority to issue the regulations in question and those regulations are valid. The regulations re-

quire a permit to be obtained before a billboard may be legally erected. United erected its billboards without first obtaining a permit. Accordingly, the trial court's finding that United's billboards were illegal per se was proper. Although the trial court did not address every issue presented by the parties, its decision to grant summary judgment to the Cabinet in both actions was correct as there were no material questions of fact and the Cabinet's right to judgment was "shown with such clarity that there ... [is] no room left for controversy." *Commonwealth v. G.L.G., Inc.,* Ky., 937 S.W.2d 709, 713 (1997).

The judgments of the Rockcastle Circuit Court are hereby affirmed.

ALL CONCUR.

---

8. United argues that the Cabinet erred by filing an action in the Rockcastle Circuit Court rather than following the administrative appeal procedure set forth in 603 KAR 3:080 § 9. That regulation provides that "[a] party aggrieved by the action of the Transportation Cabinet ... may file a written appeal with the Office of General Counsel in the Transportation Cabinet...." The regulation

does not set forth a procedure for the Transportation Cabinet to appeal. Permitting the Cabinet to appeal its actions to itself would be illogical. Furthermore, the regulation states that a party "may" file an administrative appeal. When utilized in an administrative regulation, the term "may" denotes a discretionary and not a mandatory action. KRS 13A.222(4)(b).