**COMMONWEALTH of Kentucky, BOARD OF EXAMINERS OF PSYCHOLOGY, Appellant,**

v.

**Nancy FUNK and Comprehend, Inc., Appellees.**

No. 2001–CA–001481–MR.

Court of Appeals of Kentucky.

June 28, 2002.

A.B. Chandler, III, Attorney General, Mark Brengelman, Assistant Attorney General, Frankfort, KY, for appellant.

Clayton L. Robinson, Lynn Rikhoff Kolokowsky, Lexington, KY, for appellees.

Before: BUCKINGHAM, KNOPF and SCHRODER, Judges.

*OPINION*

SCHRODER, Judge.

This is an appeal by the Kentucky Board of Examiners of Psychology from the dismissal of a complaint seeking to enjoin appellee Nancy Funk from engaging in, and appellee Comprehend, Inc. from aiding and abetting, the unlicensed practice of psychology pursuant to KRS 319.005. Having determined that the Cabinet for Health Services has the authority to prescribe the qualifications and duties of employees of community mental health centers per KRS 210.450, we affirm.

Appellee Nancy Funk (Funk) is a counselor employed at appellee Comprehend, Inc. (Comprehend), a community mental health center licensed by the Commonwealth of Kentucky. Funk has a bachelor's degree in liberal arts, and received a master's degree in education in 1979, specifically in the fields of counseling and guidance. In 1980, Funk was hired by Comprehend. In order to provide counseling services at Comprehend, Funk applied to the Cabinet for Health Services (CHS) to be designated as a "professional equivalent." CHS approved Funk's application, and formally designated Funk as a professional equivalent, effective February 1, 1981.

On December 11, 2000, appellant, the Kentucky Board of Examiners of Psychology (Board), filed a complaint for injunctive relief against Comprehend and Funk seeking to prohibit Funk from engaging in the alleged unauthorized practice of psychology. The Board sought both a temporary and permanent injunction to preclude Funk from providing counseling services at Comprehend and to preclude Comprehend from aiding and abetting what the Board alleged was the unlicensed practice of psychology by Funk and other unlicensed personnel at Comprehend.

The Fleming Circuit Court held a hearing on May 1, 2001 on the Board's motion for temporary injunction. The court found that a determination of whether the Board was entitled to the relief it sought rested upon two issues:

(1) Whether the provisions of Chapter 319 apply to Funk's counseling.

(2) If the provisions of Chapter 319 do apply to Funk, does the counseling she provides constitute "the practice of psychology" as defined in KRS 319.010(3) [sic][1].

Based upon the evidence presented at the May 1, 2001 hearing, the court found that KRS Chapter 319 does not apply to Funk, finding that she met the criteria for exemption therefrom under KRS 319.015(3). Although noting such finding amounted to a dismissal of the Board's complaint, the court nevertheless went on to find that Funk's counseling activities at Comprehend did not amount to the "practice of psychology" as that phrase is defined in Kentucky law. This appeal by the Board followed.

On appeal, the Board agrees that the circuit court correctly identified the legal issues before it, but that it erroneously concluded as a matter of law that KRS Chapter 319 does not apply to Funk, and that it abused its discretion in finding that Funk's counseling activities do not amount to the "practice of psychology" as defined in Kentucky law. We agree with the circuit court that Funk is exempt from the provisions of KRS Chapter 319, but base this conclusion on different grounds than did the circuit court.

The Board of Examiners of Psychology is the state agency charged with enforcing the provisions of KRS Chapter 319, which governs the practice of psychology in Kentucky. KRS 319.118. The Board regulates the practice of psychology by credentialing and disciplining psychologists. Another duty of the Board is to prevent the practice of psychology by persons not licensed by the Board. KRS 319.005 provides that:

No person shall engage in the practice of psychology as defined in KRS 319.010 or hold himself or herself out by any title or description of services which incorporates the words "psychological," "psychologist," or "psychology", unless licensed by the board. No person shall engage in the practice of psychology in a manner that implies or would reasonably be deemed to imply that he or she is licensed, unless he or she holds a valid license issued by the board.

The "practice of psychology" is defined in KRS 319.010(6) as:

[R]endering to individuals, groups, organizations, or the public any psychological service involving the application of principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, thinking, emotions, and interpersonal relationships; the methods and procedures of interviewing, counseling, and psychotherapy; of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotion, and motivation. The application of said principles in testing, evaluation, treatment, use of psychotherapeutic techniques, and other methods includes, but is not limited to: diagnosis, prevention, and amelioration of adjustment problems and emotional, mental, nervous, and addictive disorders and mental health conditions of individuals and groups; educational and vocational counseling; the evaluation and planning for effective work and learning

1. KRS 319.010(6).

situations; and the resolution of interpersonal and social conflicts[.]

KRS 319.015 specifically excludes certain persons from the provisions of KRS Chapter 319. KRS 319.015, "Activities not included in practice of psychology", provides, in pertinent part:

Nothing in [Chapter 319] shall be construed to limit:

. . . .

(3) Persons licensed, certified, or registered under any other provision of the Kentucky Revised Statutes from rendering services consistent with the laws regulating their professional practice and the ethics of their profession. They shall not represent themselves to be psychologists or use the term "psychological" in describing their services[.]

■■■ We agree with the Board that "professional equivalents" are not exempt from the provisions of KRS Chapter 319 per KRS 319.015(3). The plain language of KRS 319.015(3) indicates that such exemptions are reserved for professions defined and regulated under the Kentucky Revised Statutes. "Professional equivalents" do not exist in the Kentucky Revised Statutes as a "profession" and do not have a "professional practice," in that there are no laws regulating "professional equivalents" nor a code of ethics for the profession of "professional equivalent."

"Professional equivalents," rather, appear to be a long-standing class of employees created by the Cabinet for Health Services who have been authorized by CHS to provide counseling services at community mental health centers. From a reading of the "Statement of Emergency" pursuant to 907 KAR 1:044E (effective December 15, 2000), it appears that there are a limited number of psychiatrists available to serve community mental health centers, and, as such, the centers are limited in the number of people they can serve.

For this reason, the regulation indicates the centers are permitted to use employees such as professional equivalents to provide psychological services in order that more people in need have access to mental health care. The term "professional equivalent" appeared in 907 KAR 1:044E, Section 1(16), which provided that:

(16) "Professional equivalent" means a person who:

(a) Does not meet the minimum qualifications of the professionals found in Section 3(1)(b)2.a. through i.;

(b) Has the following combination of education and experience in the delivery of direct mental health services billable to Medicaid in one or more of the following mental health services while employed by a [community mental health center];

1. Therapeutic rehabilitation program;

2. Individual, group, family and collateral outpatient therapies; or

3. Intensive in-home services;

(c) Is under clinical supervision documented in his personnel file in accordance with a policy and procedure for clinical supervision approved by the center's board of directors;

(d) Has been approved for the delivery of an outpatient service by the director of the center; and

(e) Has been determined by the department through the Professional Equivalency Review Committee to meet the minimum qualifications to be deemed a professional equivalent.

■■■ 907 KAR 1:044E, Section 3 indicated that CHS permitted professional equivalents to perform outpatient therapy services if done under the supervision of a psychiatrist, licensed psychologist, certified psychologist with autonomous functioning, licensed clinical social worker, or psychiatric advanced registered nurse

practitioner. 907 KAR 1:044E ensured Medicaid reimbursement for services of professional equivalents rendered in accordance with the regulation. We note that, contrary to the Board's assertion, nothing in the statutes or regulations limited professional equivalents to providing services to Medicaid patients only.

Community mental health centers, such as Comprehend, Inc., are established pursuant to KRS 210.370, which provides that:

Any combination of cities or counties of over fifty thousand (50,000) population, and upon the consent of the secretary of the Cabinet for Health Services, any combination of cities or counties with less than fifty thousand (50,000) population, may establish a regional community mental health and mental retardation services program and staff same with persons specially trained in psychiatry and related fields. Such programs and clinics may be administered by a community mental health-mental retardation board established pursuant to KRS 210.370 to 210.460, or by a nonprofit corporation.

KRS 210.450 empowers the secretary of the Cabinet for Health Services to prescribe the qualifications of those who provide services at community mental health centers. KRS 210.450 provides that:

In addition to the powers and duties already conferred upon him by the law, the secretary of the Cabinet for Health Services shall:

(1) Promulgate policies and regulations governing eligibility of community mental health and mental retardation programs to receive state grants and other fund allocations from the Cabinet for Health Services, *prescribing standards for qualification of personnel and quality of professional service* and for in-service training and educational leave programs for personnel, governing eligi-bility for service so that no person will be denied service on the basis of race, color or creed, or inability to pay, providing for establishment of fee schedules which shall be based upon ability to pay, regulating fees for diagnostic services, which services may be provided for anyone without regard to his financial status, when referred by the courts, schools, or health and welfare agencies whether public or private, governing financial record keeping, prescribing standards for personnel management operations, providing for financial and program reporting requirements, *and such other policies and regulations as he deems necessary to carry out the purposes of KRS 210.370 to 210.460;*

. . . .

(4) Employ necessary and qualified personnel to implement KRS 210.370 to 210.460[.] (emphasis added.)

From a reading of KRS 210.370, KRS 210.450, and 907 KAR 1:044E, it is clear that the broad definition of the "practice of psychology" found in KRS 319.010 encompasses the services provided by community mental health centers. Hence, we believe a conflict exists between KRS 210.450, which authorizes the Cabinet for Health Services to prescribe the qualifications of those who provide psychological services at community mental health centers and KRS 319.005, which prohibits the "practice of psychology" as that term is defined in 319.010(6) by one not licensed by the Board (or falling within an exception per KRS 319.015.) In addressing the conflict, we apply the rules governing statutory construction. A specific statute controls over a more general statute. *Heady v. Commonwealth*, Ky., 597 S.W.2d 613 (1980). "[A]s between legislation of a broad and general nature on the one hand, and legislation dealing minutely with a specific matter on the other hand—the

specific shall prevail over the general." *City of Bowling Green v. Board of Education of Bowling Green Independent School District*, Ky., 443 S.W.2d 243, 247 (1969). Statutes must be interpreted according to the intent of the legislature. *Id.; Beckham v. Board of Education of Jefferson County*, Ky., 873 S.W.2d 575, 577 (1994).

KRS 319.005 is a general statute, which, by its plain language indicates a legislative intent to protect the public from unqualified individuals representing themselves to be psychologists. KRS 210.450 is a specific statute governing community mental health centers and the employees thereof, placing them under the authority of the Cabinet for Health Services. An administrative agency may promulgate administrative regulations, and such regulations, if "duly adopted and properly filed have the full effect of law." *United Sign, Ltd. v. Commonwealth, Transportation Cabinet, Department of Highways*, Ky.App., 44 S.W.3d 794, 798 (2000), *quoting Flying J Travel Plaza v. Commonwealth, Transportation Cabinet, Department of Highways*, Ky., 928 S.W.2d 344, 347 (1996). *See also Hagan v. Farris*, Ky., 807 S.W.2d 488 (1991). However, an administrative agency's authority "is limited to a direct implementation of the functions assigned to the agency by the statute." *United Sign*, 44 S.W.3d at 798, *quoting Flying J Travel Plaza*, 928 S.W.2d at 347. KRS 210.450 specifically grants the secretary of CHS the authority to prescribe the policies and regulations which govern community mental health centers, and specifically grants the secretary the authority to determine the qualifications necessary for personnel providing services at the centers. Applying the aforementioned rules of statutory construction, the more specific statute, KRS 210.450, rather than KRS 319.005, therefore controls with regard to the qualifications of persons who may provide psychological services at community mental health centers. Accordingly, we hold that a "professional equivalent," such as Nancy Funk, providing counseling services as an employee of a community mental health center is not governed by KRS Chapter 319, *i.e.*, the authority of the Board of Examiners of Psychology, but is governed by the regulations promulgated by the Cabinet for Health Services, per the authority of KRS 210.450. In light of our holding that KRS Chapter 319 does not apply to Funk's counseling activities in this case, the issue of whether Funk's activities constituted the "practice of psychology" as that term is defined in said chapter, and the issue of whether Comprehend was aiding and abetting the unlicensed practice of psychology are rendered moot.

For the aforementioned reasons, the order of the Fleming Circuit Court dismissing the complaint of the Kentucky Board of Examiners of Psychology is affirmed.

ALL CONCUR.