LAUREL MOUNTAIN RESOURCES, LLC, As Successor in Interest to Miller Bros. Coal, LLC; and Gene D. Campbell, Appellants,

v.

COMMONWEALTH of Kentucky, ENERGY AND ENVIRONMENT CABINET; Beverly May; and Floyd County Chapter of Kentuckians for the Commonwealth, Appellees.

No. 2010–CA–001860–MR.

Court of Appeals of Kentucky.

Feb. 17, 2012.

Mark R. Overstreet, Frankfort, KY, W. Blaine Early, III (argued), Lexington, KY, for Appellant Laurel Mountain Resources, LLC.

Spencer D. Noe, Donald M. Wakefield, Lexington, KY, Amicus Curiae for the Kentucky Coal Association.

S. Bradford Smock (argued), Office of General Counsel, Frankfort, KY, for Appellee Commonwealth Of Kentucky, Energy And Environment Cabinet.

Mary Varson Cromer, Whitesburg, KY, for Appellees Beverly May and Floyd County Chapter of Kentuckians for the Commonwealth.

Steven A. Sanders (argued), Whitesburg, KY, for Appellees Beverly May and Floyd County Chapter of Kentuckians for the Commonwealth.

Before TAYLOR, Chief Judge; CLAYTON, Judge; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

This appeal arises from an order of the Secretary of the Commonwealth of Kentucky, Energy and Environment Cabinet ("the Cabinet") denying a "Lands Unsuitable for Mining" petition filed by Beverly May but nonetheless imposing numerous restrictive conditions on all future surface coal mining in the petition area. The order was affirmed by the Franklin Circuit Court. Appellants Laurel Mountain Resources, LLC (as successor in interest to Miller Bros. Coal, LLC) and Gene D. Campbell[2] challenge the determination on a variety of grounds. After careful consideration of the record and the parties' arguments, we reverse and remand for further proceedings consistent with this opinion.

## Facts and Procedural History

On or about March 26, 2008, May, on behalf of the Floyd County Chapter of Kentuckians for the Commonwealth ("FCCKC"), petitioned the Cabinet to designate 2,000 acres of the Wilson Creek watershed in Floyd County as unsuitable for surface coal mining operations pursuant to KRS 350.465(2)(b),[3] KRS 350.610, and 405 KAR[4] 24:030 Section 8. On April 9, 2008, Miller Bros. Coal, LLC filed a preliminary application for a permit to conduct surface coal mining operations in a portion of the Wilson Creek watershed.

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Campbell served as the Vice President of Land and Engineering for Miller Bros.

3. This provision authorizes the Cabinet to establish a procedure for unsuitability determinations as part of its permanent surface mining regulatory program. It requires no further discussion.

4. Kentucky Administrative Regulations.

Because Miller Bros. applied for this permit, the Cabinet permitted the company to be a party to the unsuitability petition proceedings.

KRS 350.610 sets forth the process and criteria to be followed by the Cabinet in considering a petition to designate lands as unsuitable for surface coal mining, as well as the circumstances under which a finding of unsuitability is mandatory or subject to the discretion of the Cabinet Secretary. A finding of unsuitability is *mandatory* on those occasions when the standard set forth in KRS 350.610(2) is met: "[T]he secretary shall designate an area as unsuitable for all or certain types of surface coal mining operations, if the secretary determines that reclamation pursuant to this chapter is not technologically and economically feasible." In contrast, KRS 350.610(3) gives the secretary the *discretion* to designate an area as unsuitable for certain types of surface mining operations under the following circumstances:

> (3) Upon petition and hearing pursuant to subsection (6) of this section, a surface area may be designated unsuitable for certain types of surface coal mining operations if such operations will:
>
> (a) Be incompatible with existing state and local land use plans; or
>
> (b) Affect fragile or historic lands in which such operations could result in significant damage to important historic, cultural, scientific, and aesthetic values, and natural systems; or
>
> (c) Affect renewable resource lands in which such operations could result in a substantial loss or reduction of long-range productivity of water supply or food or fiber products, and such lands to include aquifers and aquifer recharge areas; or

> (d) Affect natural hazard lands in which such operations could substantially endanger life and property, such lands to include areas subject to frequent flooding and areas of unstable geology.

The language of 405 KAR 24:030 Section 8(1) and (2) tracks the "mandatory" and "discretionary" provisions of KRS 350.610, with Section 8(1) addressing the former and Section 8(2) the latter.

In her petition, May raised four allegations to support her claim that the petition area was unsuitable for surface mining. She specifically argued that it was: (1) a "natural hazard land" subject to frequent flooding; (2) a "historic land" due to the presence of the Cedar Cliffs rock outcropping; (3) a "natural hazard land" prone to landslides, subsidence, and unstable geology as a result of previous deep mining and auger mining operations; and (4) a "renewable resource land" because Wilson Creek constituted a portion of the headwaters of the Big Sandy River. Thus, the petition's allegations allude to the criteria for discretionary designation of lands as unsuitable for mining that are set forth in KRS 350.610(3) and 405 KAR 24:030 Section 8(2). The petition also made reference to concerns about the possible effects of surface mining operations on Wilson Creek Road and Big Fork Road, although these concerns were not specifically set forth in an allegation.

Following a public hearing and public comment period,[5] the Cabinet issued an order denying May's petition to designate the Wilson Creek watershed as an area unsuitable for surface coal mining. In the order, the Cabinet addressed each allegation raised in the petition and explained how each of them failed to support an

---

**5.** The Cabinet received 36 letters of comment from citizens, as well as comments from public agencies such as the Kentucky Heritage Council, the Kentucky Geological Survey, the Kentucky Division of Forestry, and the Kentucky Division of Water.

unsuitability determination. As to Allegation No. 1, the Cabinet found that any risk of flooding in Wilson Creek was "minimal" and that it was "questionable whether Wilson Creek watershed is, in fact, a natural hazard land due to flooding characteristics since it is typical of watersheds in the region." The Cabinet further found that this concern could be adequately addressed through a separate surface mining permit review process. The Cabinet rejected Allegation No. 2 after finding that the alleged "historic lands" were actually located well outside of the petition area. The Cabinet rejected Allegation No. 3 on the grounds that there was no significant or unique risk-of-stability concern in the petition area and concluded that any such concerns could also be addressed through the surface mining permit review process. Finally, the Cabinet similarly found, for purposes of Allegation No. 4, that while the petition's concerns about water quality in Wilson Creek were valid, any such concerns could be effectively addressed through the surface mining permit review process and were "not appropriately dealt with in the context of a Lands Unsuitable for Mining Petition."

However, despite rejecting all four of the petition's allegations and declining to designate the Wilson Creek watershed as unsuitable for surface mining, the Cabinet nonetheless imposed five restrictive conditions on all future surface mining in the area pursuant to 405 KAR 24:030 Section 8(3). These conditions: (1) prohibited the use of Wilson Creek Road and Big Fork Road for coal haulage and for access to mining and reclamation operations due to their condition, size, and setting;[6] (2) required forested post-mining land use in the petition area in accordance with Reclama-

tion Advisory Memorandum ("RAM") # 124 methods; (3) required sediment control plans to emphasize flood prevention by providing adequate detention to restrict predicted "during-mining" discharges at or below pre-mining levels; (4) required secondary sediment control measures and the use of "best management" practices in addition to primary sediment control measures; and (5) prohibited the approval of approximate original contour variances.

On March 11, 2009, Miller Bros. filed a Petition on Appeal and Complaint for Declaratory Relief ("the Complaint") in the Franklin Circuit Court. In the Complaint, Miller Bros. alleged that 405 KAR 24:030 Section 8(3) was invalid because it was impermissibly more stringent than federal law. Miller Bros. further alleged that the Cabinet's imposition of the conditions: (1) constituted impermissible rulemaking in violation of KRS Chapter 13A; (2) exceeded its statutory and regulatory authority; (3) violated Miller Bros.' right to due process; and (4) unconstitutionally impaired Miller Bros.' contracts. In the alternative, Miller Bros. argued that the Cabinet's decision to impose restrictive conditions was not supported by substantial evidence.

On September 10, 2010, the circuit court entered an Opinion and Order dismissing Miller Bros.' complaint. Of particular note, the court found that 405 KAR 24:030 Section 8(3) was not more stringent than federal law and that the Cabinet did not exceed its statutory authority in imposing the restrictive conditions. The court also found that the Cabinet had relied on substantial evidence in imposing the conditions and that its decision did not effectuate an unlawful impairment of Miller Bros.' mining contracts.[7] This appeal followed.

---

6. In imposing this condition, the order conceded that "[t]his concern was not raised in the context of any of the [lands unsuitable] allegations[.]"

7. The circuit court did not address Appel-

## Analysis

Appellants first argue that 405 KAR 24:030 Section 8(3) is more stringent than federal law and thereby violates Kentucky law because it permits the Cabinet to impose restrictive conditions on surface mining in the absence of a threshold determination that a petition area is unsuitable for all or certain types of such mining. Appellants further contend that this regulation impermissibly expands and modifies the Cabinet's regulatory authority in such matters, which is established in KRS 350.610. For reasons that follow, we agree with these contentions.

The statutes and regulations in issue grew out of the Federal Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 United States Code (U.S.C.) § 1201 *et seq.* Section 1272 of SMCRA establishes the general requirements for the federal "lands unsuitable for mining" designation process and also sets forth guidelines that states must follow in order to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations within their borders. Specifically, each state is required to "establish a planning process enabling objective decisions based upon competent and scientifically sound data and information as to which, if any, land areas of a State are unsuitable for all or certain types of surface coal mining operations pursuant to the standards set forth in paragraphs (2) and (3) of this subsection[.]" 30 U.S.C. § 1272(a)(1); *see also* 30 U.S.C. § 1253(a); 30 Code of Federal Regulations ("C.F.R.") § 762.11(a)–(b).

Pursuant to 30 U.S.C. § 1272, "the State regulatory authority shall designate an area as unsuitable for all or certain types of surface coal mining operations if the State regulatory authority determines that reclamation pursuant to the requirements of this chapter is not technologically and economically feasible." 30 U.S.C. § 1272(a)(2). The regulatory authority also has the discretion to designate a surface area as unsuitable for certain types of surface coal mining operations if such operations are (1) "incompatible with existing State or local land use plans or programs"; (2) "affect fragile or historic lands in which such operations could result in significant damage to important historic, cultural, scientific, and esthetic values and natural systems"; (3) "affect renewable resource lands in which such operations could result in a substantial loss or reduction of long-range productivity of water supply or of food or fiber products, and such lands to include aquifers and aquifer recharge areas"; or (4) "affect natural hazard lands in which such operations could substantially endanger life and property, such lands to include areas subject to frequent flooding and areas of unstable geology." 30 U.S.C. § 1272(a)(3)(A)–(D).

Pursuant to SMCRA, Kentucky adopted KRS 350.010 *et seq.*, (the surface coal mining act), and the attendant regulations set forth in 405 KAR Chapter 24. *Franklin v. Natural Res. & Envtl. Prot. Cabinet, Com. of Ky.*, 799 S.W.2d 1, 3 (Ky.1990). KRS 350.610 is Kentucky's equivalent to 30 U.S.C. § 1272, and, for all relevant purposes, its provisions mirror the standards set forth in the federal law for unsuitability determinations in their entirety. *See, e.g.*, KRS 350.610(1)–(3); *see also* 405 KAR 24:030 Section 8(1)–(2). As noted above, Appellants sought a finding of unsuitability pursuant to KRS 350.610(3), which is Kentucky's equivalent to 30 U.S.C. § 1272(3)

lants' contention that the Cabinet's decision constituted an improper promulgation of administrative regulations.

and provides that "a surface area may be designated unsuitable for certain types of surface coal mining operations" if particular criteria are met. KRS 350.610(3)(a)–(d); *see also* 405 KAR 24:030 Section 8(2).

■ The Cabinet is authorized by KRS Chapter 350 to adopt administrative regulations to administer and enforce SMCRA, but it is forbidden to adopt regulations that are more stringent than required by the federal act or that are inconsistent with that act. *See* KRS 13A.120(1)(a); KRS 350.028(5); KRS 350.465(2) & (4). Accordingly, Cabinet regulations have been held invalid where they required a regulated party to comply with terms more stringent than the requirements of SMCRA. *See Franklin,* 799 S.W.2d at 3. A regulation that violates this prohibition is "null, void, and unenforceable." KRS 13A.120(4). Hence, in order to be valid, a regulation must "be justified by an express grant of regulatory authority clearly embracing that regulation." *Bowling v. Kentucky Dept. of Corrections,* 301 S.W.3d 478, 491 (Ky.2009). The promulgating administrative body bears the burden of proving that a challenged regulation is valid. KRS 13A.140(1).

At issue herein is the validity of 405 KAR 24:030 Section 8(3), which provides:

> If the cabinet does not designate a petitioned area under subsection (2) of this section, the secretary may direct that any future permits issued for the area contain specific requirements for minimizing the impact of surface coal mining operations on the feature that was the subject of the petition.

Thus, the regulation allows the Cabinet, when considering an unsuitability petition, to impose restrictive conditions on any future surface mining permits in a petition area *even if* the Cabinet refuses to designate that area as unsuitable for all or certain types of surface mining. Appel-

lants argue that neither SMCRA nor its attendant regulations contains a similar allowance and that 405 KAR 24:030 Section 8(3) is, therefore, more stringent than permitted by law.

Appellants assert that SMCRA and its regulations contain no language explicitly allowing an agency to impose restrictive conditions on future permits in the context of an unsuitability proceeding where an unsuitability petition is denied. Because of this, they contend that 405 KAR 24:030 Section 8(3) is more stringent than SMCRA, and therefore runs afoul of Kentucky law, as it creates the potential for a regulated party to be ordered to comply with terms more stringent than the requirements of the federal act, *i.e.,* the imposition of mining restrictions in an unsuitability proceeding even where the unsuitability petition itself has been denied. Appellants maintain that in the absence of a total or partial unsuitability designation, the decision to impose restrictive conditions as to a petition area should be left to the standard surface mining permit process set forth in 405 KAR Chapter 8.

In challenging and rejecting Appellants' arguments below, Appellees and the circuit court relied heavily upon the text and legislative history of 30 U.S.C. § 1272(b), which addresses the United States Secretary of the Interior's review of petitions to declare federal lands unsuitable for surface coal mining. That provision states, in relevant part, as follows:

> The Secretary shall conduct a review of the Federal lands to determine, pursuant to the standards set forth in paragraphs (2) and (3) of subsection (a) of this section, whether there are areas on Federal lands which are unsuitable for all or certain types of surface coal mining operations: *Provided, however,* that the Secretary may permit surface coal

mining on Federal lands prior to the completion of this review. *When the Secretary determines an area on Federal lands to be unsuitable for all or certain types of surface coal mining operations, he shall withdraw such area or condition any mineral leasing or mineral entries in a manner so as to limit surface coal mining operations on such area.*

30 U.S.C. § 1272(b) (Emphasis added). Appellees rely on the highlighted language for the proposition that the Secretary and, by extension, the Cabinet maintain considerable discretion to impose conditions limiting surface mining operations in an unsuitability proceeding. They argue that Appellants' insistence that a petition area must actually be found "unsuitable" before such conditions may be imposed is an unreasonably rigid interpretation of the law.

■ Appellees' arguments, however, ignore the plain language of 30 U.S.C. § 1272(b), which provides that conditions may be imposed *"[w]hen the Secretary determines an area on Federal lands to be unsuitable for all or certain types of surface coal mining operations[.]"* (Emphasis added). Thus, while 30 U.S.C. § 1272(b) undoubtedly gives the Secretary

the authority to "condition any mineral leasing or mineral entries in a manner so as to limit surface coal mining operations on such area[,]" it unambiguously restricts that authority to instances in which a designation of unsuitability for all or certain types of surface mining is actually made.[89] As noted above, no such designation was made in this case. Appellees' unsuitability petition was explicitly denied. Nothing within 30 U.S.C. § 1272(b) suggests that the Secretary of the Interior (or the Cabinet) may utilize the lands unsuitable process to impose restrictive conditions on land that has not been found at least partially unsuitable for surface mining operations. *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002); *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247 (Ky. 1962).

To support its view, the circuit court relied upon the legislative history of that provision in reaching a different conclusion and determining that the Secretary has more discretion than the text of 30 U.S.C. § 1272(b) would otherwise indicate. Specifically, the court considered the following language from a House of Representatives report on SMCRA:[10]

---

**8.** The Cabinet also cites to *In re Permanent Surface Min. Regulation Litig.*, 620 F.Supp. 1519 (D.D.C.1985), aff'd in part, rev'd in part sub nom. by *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694 (D.C.Cir.1988), in support of its argument. It particularly highlights the following language from that opinion: "Section 522 of SMCRA [30 U.S.C. § 1272] establishes a process through which mining may be limited or prohibited if an area is designated as unsuitable for surface coal mining." *Id.* at 1544. However, this language only reinforces the necessity of an unsuitability determination since it affirms that "mining may be limited or prohibited *if an area is designated as unsuitable for surface coal mining.*" *Id.* (Emphasis added).

**9.** Appellees' reliance upon *Old Ben Coal Co. v. Dep't of Mines & Minerals*, 204 Ill.App.3d

1062, 150 Ill.Dec. 399, 562 N.E.2d 1202 (1990) is equally unavailing. In that case, a coal mining company sought to vacate a permit condition based on state regulations requiring the repair or restoration of structures damaged by subsidence on the grounds that SMCRA did not contain this requirement. However, this argument was rejected because the then-effective federal regulations explicitly deferred to state law on this subject. *See id.* at 1206–07. In the present case, no SMCRA provision defers to the states on the issue of whether restrictive conditions may be imposed in an unsuitability proceeding absent an unsuitability designation.

**10.** The specific passage relied upon by the circuit court is italicized for emphasis, but this Court felt it appropriate to quote the entire paragraph in which it is found.

The committee wishes to emphasize that this section does not require the designation of areas as unsuitable for surface mining other than where it is demonstrated that reclamation of an area is not physically or economically feasible under the standards of the act. The other criteria for designation, which relate to general planning and environmental concerns, are discretionary and thus *the State could determine that no lands should be designated thereunder, or, on the other hand, could prohibit all or some types of surface mining entirely. In addition to the discretionary designation criteria, the designation process includes other elements of flexibility. For example, the designation of unsuitability will not necessarily result in a prohibition of mining. The designation can merely limit specific types of mining and thus the coal resource may still be extracted by a mining technology which would protect the values upon which the designation is premised.* In addition, after an area is designated, coal development is not totally precluded as exploration for coal may continue. Moreover, any interested person may petition for termination of a designation. H.R.Rep. No. 95–218, at 94 (1977), *reprinted in* 1977 U.S.C.C.A.N. 593, 630–31.

The circuit court focused on the language "other elements of flexibility" and the given "example" that "the designation of unsuitability will not necessarily result in a prohibition of mining ... [but] can merely limit specific types of mining" and concluded that it gave the Secretary the discretion to impose conditions in the absence of an unsuitability designation that are less restrictive than limiting the permissible types of mining. However, we fail to see how this language supports the conclusion reached by the circuit court, particularly in light of the unambiguous language of 30 U.S.C. § 1272(b). The ex-

ample relied upon by the circuit court plainly presupposes a designation of unsuitability and, in our view, merely emphasizes that such designation does not necessarily result in a total prohibition of mining. Instead, it may "merely limit specific types of mining[.]" We further note that the other examples of flexibility provided in the House report, *i.e.*, "after an area is designated, coal development is not totally precluded as exploration for coal may continue" and "any interested person may petition for termination of a designation[,]" similarly presuppose a determination of unsuitability.

The circuit court also cited the following passage from that same House report as "[e]ven more telling":

It should be noted that the designation process is structured to be applied on an area basis, rather than a site by site determination which presents issues more appropriately addressed in the permit application process. The committee believes that the area by area approach of section 522 thus serves the industry since such a process may, in advance of application, *identify lands which are either not open to surface mining or where surface mining is subject to restrictions.*

H.R.Rep. No. 95–218, at 95, *reprinted in* 1977 U.S.C.C.A.N. at 631. (Emphasis added). However, we fail to see how this language supports the circuit court's position. Instead, when read together with the remainder of the report, it merely reinforces that a petition area may be found unsuitable for all types of surface mining or for only certain types. Moreover, we again reiterate that the language presupposes a determination of unsuitability. To conclude otherwise would contradict the plain language of 30 U.S.C. § 1272(b).

■ Appellees have directed us to nothing in the remainder of Section 1272 or its corresponding regulations that would provide support for this position. Instead, it is apparent from the language of Section 1272 *and* the legislative history relied upon by Appellees and the circuit court that any imposition of restrictive conditions in a lands unsuitable proceeding must be preceded by a threshold determination that the subject area is unsuitable for all or certain types of surface mining. 405 KAR 24:030 Section 8(3) runs afoul of this limitation by allowing the Cabinet to order a regulated party to comply with terms more stringent than the requirements of SMCRA, *i.e.*, to conform to surface mining restrictions following an unsuitability proceeding even where the unsuitability petition itself has been denied. Consequently, we agree with Appellants that 405 KAR 24:030 Section 8(3) is more stringent than federal law and is, therefore, "null, void, and unenforceable." KRS 13A.120(4).

In a related contention, the Cabinet also argues that it actually *did* designate the petition area as unsuitable for at least some types of surface mining, albeit implicitly, because it imposed the restrictive conditions in the first place. However, this assertion ignores the plain language of the Cabinet's order, which states that "Lands Unsuitable Petition No. 08–2 to designate the Wilson Creek watershed as unsuitable for mining *is hereby denied.*" (Emphasis added). The Cabinet's order also indicated that the Cabinet was imposing the restrictive conditions "notwithstanding [its] decision not to designate the Wilson Creek watershed as unsuitable for mining[.]" Therefore, any suggestion that the Cabinet actually made an unsuitability determination must be rejected, as it ignores the unambiguous language of the order.[11]

Appellants next argue that since 405 KAR 24:030 Section 8(3) is more stringent than allowed by federal law it also impermissibly modifies and expands the Cabinet's regulatory authority as established in KRS 350.610. As we noted above, for all relevant purposes, KRS 350.610 is Kentucky's equivalent to 30 U.S.C. § 1272, and its criteria for a discretionary designation of unsuitability mirror those established in SMCRA. *See* KRS 350.610(3); *see also* 30 C.F.R. § 762.11(b).

Like SMCRA, KRS 350.610 contains no language that would claim to give the Cabinet the authority to impose restrictive conditions on surface mining when a lands unsuitable petition has been denied. Instead, the statute expressly authorizes the Cabinet to produce "objective decisions based upon competent and scientifically sound data as to which, if any, lands of the Commonwealth are unsuitable for all or certain types of surface coal mining operations[.]" KRS 350.610(1). The circuit court concluded (with no elaboration on the point) that 405 KAR Section 24:030 Section 8(3) does not impermissibly expand the scope of KRS 350.610(1), but we must reject this conclusion for the same reasons discussed above. Simply stated, KRS 350.610 does not anticipate the imposition of restrictive conditions in an unsuitability proceeding in the absence of a determination of unsuitability.

■ It is well-established that "rules or regulations of an administrative agency must be within the limitations of the law for the enforcement of which they are provided and must be reasonable[.] ... [T]he validity of a rule or regulation de-

---

11. We also note that this contention ignores the circuit court's explicit reliance on 405 KAR 24:030 Section 8(3), which purports to apply in cases where the Cabinet "does not designate a petitioned area [as unsuitable] under subsection (2) of [Section 8.]"

pends upon whether the administrative agency was empowered to adopt the particular rule and, if so, whether the rule, is reasonable[.]" *Lovern v. Brown*, 390 S.W.2d 448, 449 (Ky.1965) (Citation omitted). To the extent that 405 KAR 24:030 Section 8(3) suggests that restrictive conditions may be imposed on surface mining in the absence of a determination of unsuitability, it fails to comply with these requirements and is "null, void, and unenforceable." *See* KRS 13A.120(2)(h) & (4).

We finally address Appellees' assertion that the conditions set forth in the Cabinet's order "are employed in virtually every permit issued by the Cabinet" and should, therefore, not be viewed as "restrictive." However, as the conditions in question are unquestionably restrictive in that they place burdens on any party wishing to conduct surface mining operations in the petition area, any assertion to the contrary rings hollow.

█ Moreover, this perspective only supports the argument that such matters are best left to the permit process since KRS 13A.120(2)(e) expressly prohibits an administrative body from promulgating a regulation "[w]hen a statute prescribes the same or similar procedure for the matter regulated[.]" As required by SMCRA, the General Assembly adopted a program establishing detailed and extensive surface mining permit requirements in KRS 350.060,[12] as a result of which the Cabinet promulgated corresponding regulations in 405 KAR Chapter 8. These provisions provide a proper platform for a concerned party to seek restrictions or limitations on surface mining in instances where an unsuitability petition has been denied. Indeed, as noted above, the Cabinet's order repeatedly expresses the view that its separate mining permit review process provid-

ed a sufficient means of addressing the concerns raised in Appellees' lands unsuitable petition. Ultimately, "[a]ny doubts concerning the existence or extent of an administrative agency's power should be resolved against the agency." *United Sign, Ltd. v. Commonwealth*, 44 S.W.3d 794, 798 (Ky.App.2000). On this occasion, we are deeply in doubt and consequently reject 405 KAR 24:030 Section 8(3) as running afoul of both federal and state law. In light of our decision, we decline to address the other arguments presented by Appellants.

### Conclusion

For the foregoing reasons, we reverse the decision of the Franklin Circuit Court affirming the Energy and Environment Cabinet's imposition of restrictive conditions on all future mining in the Wilson Creek watershed petition area. In reaching this decision, we hold that 405 KAR 24:030 Section 8(3) is contrary to Kentucky law and more stringent than SMCRA, thereby rendering it null, void and unenforceable. In this case, the Cabinet expressly refused to make a finding of unsuitability yet proceeded to impose restrictive conditions consistent with an unsuitability determination. It is for the Cabinet to reconcile and to rectify this discrepancy on remand. Either the petition area is unsuitable for all or certain types of surface mining, and consequently subject to the imposition of restrictive conditions, or it is not.

Accordingly, this matter is remanded to the Cabinet for further proceedings and a determination consistent with this opinion.

ALL CONCUR.

---

**12.** The federal permitting requirements are    set forth in 30 U.S.C. §§ 1256–61.